## COMMONWEALTH of Pennsylvania

### v.

### Robert ROVINSKI, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 14, 1997.

Filed Nov. 25, 1997.

Joseph Haag, Asst. Public Defender, Warminster, for appellant.

Colin M. Jenei, Asst. Dist. Atty., Doylestown, for the Com., appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Robert Rovinsky (appellant) appeals from a judgment of sentence entered in the Bucks County Court of Common Pleas on March 25, 1997. Appellant alleges ineffective assistance of counsel, various errors in the conduct of the trial, and errors in the sentence imposed. We affirm.

On December 13, 1991, appellant was convicted by a jury of multiple counts of attempted murder, aggravated assault, simple assault, attempted arson, reckless endangerment of another person, and possession of instruments of a crime. Appellant timely filed post-conviction motions. The trial court conducted an evidentiary hearing on November 16, 1992, and then denied appellant's motions on May 27, 1993. On July 28, 1993, the Bucks County Court of Common Pleas sentenced appellant to an aggregate of fifty to a hundred years' incarceration. Upon reconsideration, the trial court reduced this sentence to an aggregate of forty-seven and one-half to ninety-five years. On September 22, appellant appealed the sentence after reconsideration to this Court. On March 23, 1994, having questions concerning the failure of trial counsel to present a diminished capacity defense, we vacated appellant's sentence and remanded the case for an evidentiary hearing. *See Commonwealth v. Rovinski*, No. 3045 Philadelphia 1993, 435 Pa.Super. 651, 645 A.2d 893 (filed 3/23/94). The trial court conducted the required evidentiary hearing on February 28th and 29th, 1996. Nine months later, on December 24, 1996, the trial court again denied appellant's post-trial motions, finding appellant's ineffec-

tive assistance of counsel claim meritless. Consequently, on March 25, 1997, the court re-sentenced appellant to an aggregate of forty-seven and one-half to ninety-five years of incarceration.

"It is axiomatic that in reviewing findings of fact, an appellate court must give great deference to the fact finder whose province it is to pass upon the credibility of witnesses, whom [she or] he has seen and heard, and determine the weight if any to be given their testimony." *Commonwealth v. Iannaccio*, 505 Pa. 414, 425, 480 A.2d 966, 971 (1984). Consequently, this Court must accept as true those findings of the trial court supported by the record. *See id.; Commonwealth v. Williams*, 539 Pa. 61, 71–72, 650 A.2d 420, 425–26 (1994). Therefore, we adopt the following narrative of the events leading to appellant's arrest which was supplied by the trial court and is supported by the record.

[Appellant] and victim were employed by a local newspaper. At approximately 1:00 a.m. on March 29, 1991, while at work, [appellant] saw Sharon Zorger (one of the aforesaid victims) talking to one Darrel Frost (another victim). [Ms. Zorger and Mr. Frost formerly had a romantic relationship.] More recently, over the last two years, [appellant and Ms. Zorger] had been developing their own romantic relationship. [Appellant] saw [Mr. Frost] touch [Ms. Zorger] on the shoulders. Shortly thereafter, [appellant] confronted [Ms. Zorger], yelled profanities at her and made accusations against her. [Appellant] then confronted Darrel Frost about what he had seen. [Appellant told Mr.] Frost, "I'm going to blow her head off tonight." Next he spoke to his foreman and advised him he was quitting his job.

[Appellant] went to his house, drenched the interior with kerosene and lit several candles with the intention of setting the place on fire. Then, he obtained his shotgun and a box of live shells and left the house. He returned to work and looked for Ms. Zorger's car. Not finding it, he drove toward her home and blocked her car with his as she neared her home. [Appellant] armed with the shotgun, ordered her out of the car. He loaded the gun in

her presence and shot her windshield and radiator. He told her, "They are not taking me alive." He then looked at her and said, "Pray or run." He shot her and she fell to the ground, playing dead until he left in his car. She sustained a serious leg wound. [Appellant] was convicted of aggravated assault as to this incident.

[Appellant] went back to work where he confronted a fellow worker. He pointed the gun at him and said, "Just keep moving, Mike, I have no grudge with you, just keep moving." [Appellant] then ran into the pressroom where he shot one Robert Johnson in the right thigh from six feet away. A short time later, [Mr.] Johnson took off his shirt and made a tourniquet. [Appellant] then confronted Francis Mitchell, pointing the gun at him, while motioning another employee out of the way. He pointed the gun at [Mr.] Mitchell's waist. He fired. [Mr.] Mitchell was struck in the left leg.

[Appellant] left that room, went through another room and up a hallway. There he saw Darrel Frost, who was standing near a security guard. [Appellant] fired at [Mr.] Frost, missing him and hitting the security guard in the back of both legs. [Appellant] left the building and fled the scene in his car. It was about 3:30 a.m. At about 9:30 a.m., [appellant] was arrested by an off-duty police officer. At the time [appellant] was having his disabled car towed.

A medical doctor testified that Robert Johnson probably would have bled to death if he had not applied the tourniquet to himself. [Mr.] Johnson had three major surgeries and has sustained permanent injuries. [Mr.] Mitchell spent a month in the hospital and also has permanent injuries.

Slip opinion 5/27/93, at 1–2.

### Ineffective Assistance of Counsel

We first address appellant's ineffective assistance of counsel claim that was the source of our prior remand.[1] This Commonwealth employs a three-pronged test when evaluating ineffectiveness of counsel claims:

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. The burden of establishing counsel's ineffectiveness is on the appellant because counsel's stewardship of trial is presumptively effective.

1. We have re-ordered appellant's issues on appeal for the purposes of this discussion. Appellant set forth the questions on appeal as follows:

A. Did the trial court err in failing to allow individual voir dire of prospective jurors regarding their knowledge of the incidents underlying the charges against the appellant?

B. Did the trial court err in allowing the Commonwealth to introduce photographs of a hallway into evidence absent a foundation for their admission?

C. Did the trial court err in allowing Theresa Procacino to testify that a security guard escorted employees from the Courier Times building?

D. Was appellant denied his constitutional right to counsel because trial counsel was ineffective for numerous reasons?

E. Whether the trial court erred in sentencing the appellant in that:

1. The court failed to take into account appellant's long history of mental illness dating back to 1962;

2. The sentence the court imposed upon the appellant was twenty-seven and one half to fifty-five years in excess of the recommendation by the adult probation department in its pre-sentence investigation reports;

3. The appellant's sentence on each of the informations greatly exceeded even the aggravated range for each of the informations, which the court indicated on the sentencing sheet that it sentenced appellant to;

4. The court failed to properly consider the fact that Sharon Zorger testified on the appellant's behalf at the sentencing;

5. The court erred in sentencing the appellant on information 2503–01/91 on counts 5, 7, and 9?

*Commonwealth v. Pierce,* 537 Pa. 514, 522–26, 645 A.2d 189, 194–95 (1994) (citations omitted).

 Appellant claims that trial counsel ineffectively failed to present a diminished capacity defense based on appellant's consumption of the drug Xanax. A defendant who argues diminished capacity claims that she or he lacked the mental capability to achieve the *mens rea* required for the commission of the offense. *See Commonwealth v. Weinstein,* 499 Pa. 106, 112–13, 451 A.2d 1344, 1347 (1982); *Black's Law Dictionary* 412.

 On remand the trial court found that counsel abandoned diminished capacity because he lacked sufficient evidence to establish the defense. First, appellant refused to testify. Slip opinion 12/24/96, at 12. Without appellant's testimony, counsel was unable to establish the number, if any, of Xanax tablets appellant consumed on the day in question. *Id.* at 12. Furthermore, appellant's psychiatric expert believed that, even if under the influence of Xanax, appellant would have retained the capacity to form the intent necessary to commit the offenses. *Id.* at 14. Finally, a defendant who raises diminished capacity necessarily implies commission of the acts underlying the offense. *See Commonwealth v. Weinstein,* 499 Pa. at 112–13, 451 A.2d at 1347. Counsel reasoned that, given the weakness of his diminished capacity case, pursuing the defense was not worth jeopardizing his attack on the merits of the Commonwealth's case. This was a reasonable basis for trial counsel to abandon diminished capacity.[2] Consequently, appellant has not established that failure to present diminished capacity was ineffective.

 Appellant also argues that trial counsel ineffectively failed to call several witnesses who could have testified about appellant's mental condition. The trial court

found that counsel made a tactical decision that, after abandoning any defense based on appellant's mental condition, the testimony of these witness lost all value. Slip opinion 5/27/93, at 6. This conclusion is supported by trial counsel's testimony at the evidentiary hearing. Notes of Testimony (N.T.) 11/16/92, at 55–56. A reasonable trial strategy cannot serve as the basis for an ineffective assistance claim. *See, e.g., Commonwealth v. Lee,* 541 Pa. 260, 662 A.2d 645 (1995). Assuming, *arguendo,* that there was merit in calling these witnesses, appellant has failed to show ineffective assistance because counsel's decision had a reasonable basis.

 Appellant next argues that trial counsel's failure to object to certain photographs at trial was ineffective. Trial counsel objected to these photographs in a pre-trial motion. *See Omnibus Pre–Trial Motion* (filed 12/3/91); slip opinion 5/27/93, at 6. Appellant now argues that trial counsel should have renewed the objection when the Commonwealth actually introduced the photographs into evidence. In order to show prejudice for ineffective assistance purposes, "[a]ppellant must establish that but for the arguably ineffective act or omission[,] there is a reasonable probability that the result would have been different." *Commonwealth v. Crawley,* 541 Pa. 408, 414, 663 A.2d 676, 679 (1995). Although the trial court could have reversed its earlier decision if trial counsel renewed his objection at trial, appellant has presented neither argument nor evidence suggesting a possibility that the court would have done so. Consequently, the record does not support a finding of prejudice based on appellant's failure to renew the objection. "[W]here it is clear that [a defendant] has failed to meet the prejudice prong, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met." *Commonwealth v.*

**2.** In our 1994 memorandum we wrote, "After a thorough review of the record, especially the transcript of the ineffectiveness hearing, we are convinced that counsel missed the issue of involuntary intoxication, an arguably meritorious claim, and one which shakes our faith in the reliability of [appellant's] conviction." *Commonwealth v. Rovinski,* No. 3045 Philadelphia 1993, 435 Pa.Super. 651, 645 A.2d 893 (filed March 23,

1994). One could conclude that this language settled the first two prongs of the ineffective assistance test leaving only the question of prejudice for remand. We are convinced, however, that our "remand for further evidentiary hearings on the question of diminished capacity, both voluntary and involuntary" was broad enough to leave open the question of whether counsel made a reasonable strategic decision. *Id.* at 10.

*Paolello,* 542 Pa. 47, 76, 665 A.2d 439, 454 (1995). Thus, we conclude that appellant has failed to show ineffective assistance.

■■■ Finally, appellant argues two aspects of trial counsel's opening statement made his assistance ineffective. First, counsel allegedly conceded appellant's guilt to all charges except attempted homicide. Second, counsel allegedly argued diminished capacity in opening and then failed to present any evidence of diminished capacity.[3] We are unable to review these claims because we have no record of the opening statements. It is appellant's duty to supply this court "with a record which is sufficient to permit a meaningful appellate review." *Boyle v. Steiman,* 429 Pa.Super. 1, 11, 631 A.2d 1025, 1030 (1993). Failure to ensure that the record provides sufficient information to conduct a meaningful review "constitutes waiver of the issue sought to be reviewed." *Id.* Where portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures. *See* Pa.R.A.P.1923. Appellant has made no effort to utilize these procedures. Because appellant has failed to provide a sufficient record for us to review his claim of ineffective assistance of counsel relating to the opening statements, that claim is waived.

### Individual Voir Dire

■■ Appellant claims that, given the pre-trial publicity surrounding his case, the trial court abused its discretion when it refused to allow individual voir dire of the potential jurors. We disagree.

As must be expected when a shooting occurs in the offices of a newspaper, appellant's case generated substantial pre-trial publicity. Concerned about the effect of this publicity on appellant's ability to receive a fair and impartial trial, the court, during voir dire, made a *general inquiry into whether any* jurors had prior knowledge of the case. The court then dismissed any juror with prior knowledge who did not unequivocally deny having a fixed opinion and unequivocally affirm the ability to be fair and impartial. Appellant argues that, despite these precautions, appellant should have been granted an opportunity to individually question each remaining juror with prior knowledge outside the hearing of the other jurors.

"Our Rules provide that in non-capital cases the trial court is vested with discretion in the method by which the voir dire examination shall be conducted. Absent an abuse of such discretion, a reviewing court cannot disturb the trial court's actions." *Commonwealth v. Berrigan,* 509 Pa. 118, 135, 501 A.2d 226, 235 (1985). Even in cases with pre-trial publicity "only a palpable error resulting in abuse of discretion justifies reversal" of a denial of individual voir dire. *Id.* at 137, 501 A.2d at 236; *see also Commonwealth v. Boring,* 453 Pa.Super. 600, 611–12, 684 A.2d 561, 566 (1996).

Appellant attempts to analogize his case to *Commonwealth v. Johnson,* 440 Pa. 342, 269 A.2d 752 (1970), where the Pennsylvania Supreme Court reversed a trial judge's denial of individual voir dire in a non-capital case. The *Johnson* Court specifically conditioned its holding upon the finding that the pre-trial publicity was "inflammatory" and created "the possibility that a trial could be prejudiced." *Id.* at 350–53, 269 A.2d at 757. Later cases confirm this limit. *Commonwealth v. Berrigan,* 509 Pa. at 135–37, 501 A.2d at 235–36; *Commonwealth v. Boring,* 453 Pa.Super. at 611–12, 684 A.2d at 566; Furthermore, "insofar as the publicity consists of accurate accounts of [the events leading to the arrest] it will not support a finding of prejudice." *Commonwealth v. Johnson,* 440 Pa. at 350, 269 A.2d at 756. The *Johnson* Court was only willing to find an abuse of discretion because the pre-trial publicity included publication of appellant's prior criminal record and publication of inflammatory statements made by the district attorney. *Id.* at 350–51, 269 A.2d at 756.

In the case *sub judice* there is no evidence that the pre-trial publicity consisted of anything other than accurate factual accounts.

---

3. Such allegations can serve as the basis of an ineffective assistance of counsel claim. *McAleese v. Mazurkiewicz,* 1 F.3d 159, 166 (1993), cert. den., 510 U.S. 1028, 114 S.Ct. 645, 126 L.Ed.2d 603 (1993).

The only prejudice alleged by appellant is the loss of two peremptory challenges appellant used to eliminate jurors with prior knowledge. Appellant suggests that if the trial court had allowed individual voir dire these challenges may have been better used. This is not the type of prejudice contemplated by *Johnson.* "The single goal in permitting questioning of prospective jurors is to provide the accused with a competent, fair, impartial and unprejudiced jury. However, it is not intended to provided appellant with a better basis upon which to utilize his peremptory challenges." *Commonwealth v. Hathaway,* 347 Pa.Super. 134, 143, 500 A.2d 443, 447 (1985). Consequently, appellant's argument cannot establish the prejudice required to find a palpable abuse of discretion. Therefore, the denial of individual voir dire is affirmed.

### Admission of Photographs

▮▮▮▮▮▮ Appellant argues that the trial court erred by admitting certain photographs without proper foundations. In order for a photograph to be admitted into evidence it must be properly authenticated by the testimony of a witness, with sufficient knowledge, that the photograph is a fair and accurate depiction of the relevant scene. *Commonwealth v. Sinwell,* 311 Pa.Super. 419, 423–24, 457 A.2d 957, 959 (1983). The photographs in question depict the placement of shell casings in the hallway of the Courier Times Building where Scott Allen was shot. The Commonwealth used the location of the shell casings in the photographs to place appellant at the time of the shooting.[4] Before admission of either photograph both Mr. Allen and Officer Howard Bennett of the Tullytown Borough Police Department testified that the photographs depicted the placement of the shells as they saw them shortly after the shooting. (N.T. 12/10/91, at 158–61); (N.T. 12/11/91, at 30). Appellant argues that the shell casings could have moved between the time of the shooting and the time observed by these witnesses. This possibility, however, does not weaken the accuracy of the pictures as depictions of the witnesses' obser-

vations. Appellant's argument goes to weight of the witnesses' observations rather than the authenticity of the pictures and is, therefore, a question properly settled by the jury. Consequently, appellant has failed to show any error in the admission of the photographs.

### Testimony of Theresa Procacino

▮▮▮▮▮ Appellant argues that the trial court erred in admitting certain testimony offered by Theresa Procacino because the testimony was not relevant and was prejudicial. The specific testimony challenged is Ms. Procacino's recount of several Courier Times employees being escorted from the Courier Times Building by a security guard. (N.T. 12/11/91, at 9–10). "At the outset, the admissibility of evidence is a matter addressed solely to the discretion of the trial court and may be reversed only upon a showing that the court abused its discretion. Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. LaCava,* 542 Pa. 160, 174, 666 A.2d 221, 227–28 (1995). The Commonwealth argues that Ms. Procacino's testimony tends to establish appellant's mental state on the day in question. The testimony corroborates other evidence that Ms. Zorger was accompanied by a security guard when she left the Courier Times building. "It was the Commonwealth's theory that [appellant] did not shoot Sharon Zorger at the Courier Times building because a uniformed security guard was present. The evidence demonstrates defendant's clear, rational and intentional thinking." Appellee's brief at 25. It was well within the trial court's discretion to find that Ms. Procacino's testimony logically tends to establish appellant's mental state on the day in question.

▮▮▮▮ In his brief, appellant argues that the trial court abused its discretion in failing to exclude Ms. Procacino's testimony for its prejudicial impact. Appellant, however,

---

4. The exact location of appellant and the victim at the time of the shooting was important to the Commonwealth's case for attempted murder. Appellant used a shotgun in the shooting. The Commonwealth argued that the proximity showed intent to kill.

failed to preserve this issue for appeal. "The rule is well settled that a party complaining, on appeal, of the admission of evidence in the [c]ourt below will be confined to the specific objection made." *Commonwealth v. Boden*, 399 Pa. 298, 308, 159 A.2d 894, 900 (1960) (citations omitted); *see also Laginsky v. McCollough*, 280 Pa. 286, 290, 124 A. 431, 433 (1924). At trial, appellant specifically objected to the testimony of Ms. Procacino on grounds of relevance, but did not make an objection based on prejudicial impact. (N.T. 12/11/91, at 9). The issue of prejudicial impact is distinct from the question of relevance. *See Commonwealth v. Jones*, 546 Pa. 161, 185, 683 A.2d 1181, 1193 (1996) (explaining that even relevant evidence must be excluded where its probative value is outweighed by its prejudicial impact). Consequently, the issue of the prejudicial impact of Ms. Procacino's testimony is not properly before this Court.

### Sentencing

 Appellant alleges multiple deficiencies in the sentence imposed by the trial court. Imposition of sentence is committed to the sound discretion of the sentencing judge. *See Commonwealth v. Fries*, 362 Pa.Super. 163, 167, 523 A.2d 1134, 1135 (1987). We will only disturb a sentence where the sentencing court committed a "manifest abuse" of discretion. *Id.*

 Appellant first advances a merger argument. In several instances, appellant was convicted of both attempted murder and aggravated assault for the same act of violence. The Pennsylvania Supreme Court recently clarified that, where predicated on the same act of violence, the offenses of attempted murder and aggravated assault merge.[5] *Commonwealth v. Anderson*, 538 Pa. 574, 582–83, 650 A.2d 20, 24 (1994). Because aggravated assault carries a more serious felony grade in Pennsylvania, the trial court sentenced appellant on the aggravated assault convictions rather than on the attempted murder convictions. Although aggravated

assault carries the greater penalty, for merger purposes aggravated assault is the lesser-included offense and attempted murder is the greater offense. *Id.* Appellant contends that, consequently, aggravated assault must merge into attempted murder rather than vice versa. From this reasoning, appellant concludes he should have been sentenced on the attempted murder convictions rather than on the aggravated assault convictions. We disagree.

In the *Anderson* decision, the Pennsylvania Supreme Court overruled precedent that suggested "that if the person commits only *one act* of criminal violence, but is convicted of several crimes based on this solitary act, the sentences for those crimes will merge." *Id.* at 580–81, 650 A.2d · at 22–23. The *Anderson* Court rejected this approach because it gave "criminals a 'volume discount' on crime." *Id.* The Court explained,

> If multiple acts of criminal violence were regarded as part of one larger criminal transaction or encounter which is punishable only as one crime, then there would be no legally recognized difference between a criminal who robs someone at gunpoint and a criminal who robs the person and during the same transaction or encounter pistol whips him in order to effect the robbery.

*Id.* This policy applies to the instant situation. If we accept appellant's argument then an assailant would receive a discount if the assault was, additionally, intended to kill. The *Anderson* Court clearly rejected a merger doctrine that fails to punish criminals for additional criminal activity. Consequently, we cannot accept appellant's interpretation of *Anderson* that would reward appellant with a lesser sentence because appellant attempted murder in addition to committing aggravated assault.

 Appellant next challenges various discretionary aspects of the sentence. Such appeals are not guaranteed of right. *Commonwealth v. Moore*, 420 Pa.Super. 484, 490, 617 A.2d 8, 11 (1992). Instead, an appellant

---

**5.** A defendant may receive multiple convictions and sentences for a single act of violence where the offenses are not greater and lesser included. *Commonwealth v. Anderson*, 538 Pa. at 580–81,

650 A.2d at 22–23. Aggravated assault, however, is a lesser-included offense of attempted murder. *Id.* at 582–83, 650 A.2d at 24.

must meet several requirements before an appeal of the discretionary aspects can be taken. *See Id.* The first requirement is to provide a concise statement of the reasons relied upon for the appeal. *Id.* The Rules of Appellate Procedure require:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter [to] set forth in [her or] his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f). No concise statement pursuant to Rule 2119(f) appears in appellant's brief. "Quashing the appeal [is] an appropriate response to the deficient brief tendered by appellant." *Commonwealth v. Gambal,* 522 Pa. 280, 286, 561 A.2d 710, 714 (1989); *see also Commonwealth v. Saranchak,* 544 Pa. 158, 176–77, 675 A.2d 268, 277 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). Consequently, appellant's claims regarding the discretionary aspects are quashed.

For the forgoing reasons, the judgment of sentence is affirmed.