J-A26021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NEIL PAL | |
| Appellant | No. 207 MDA 2015 |

Appeal from the Judgment of Sentence September 5, 2014
in the Court of Common Pleas of Lackawanna County
Criminal Division at No.: CP-35-CR-0002269-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 17, 2015**

Appellant, Neil Pal, appeals from the judgment of sentence imposed after his conviction, following a jury trial, of murder of the first degree in violation of 18 Pa.C.S.A. § 2502(a) and criminal conspiracy to commit murder of the first degree in violation of 18 Pa.C.S.A. § 903(c).  We affirm.

We take the following facts and procedural history from the trial court's January 9, 2015 opinion and our own independent review of the record.

Appellant's conviction stems from the shooting death of Frank Bonacci. Appellant's friend Jason Dominick and Bonacci were romantic rivals over Keri Tucker, Dominick's on-again off-again girlfriend.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The January 9, 2015 trial court opinion summarized the following circumstantial and direct evidence, which was offered at trial:

[Appellant] and Dominick were "best friends" since childhood, with [Appellant] operating as the "leader" and Dominick as the "follower" in their relationship. [Appellant] was well aware of the animus between Dominick and Bonacci, Dominick's past effort to physically beat Bonacci, and his texted threat to "snuff him." As evidenced by Dominick's bizarre text messages to Keri Tucker within twenty-four hours of Bonacci's murder, Dominick was unraveling emotionally and psychologically because of his obsession with Ms. Tucker. Only Dominick's close friend, [Appellant], was known to own or possess wad cutter bullets and handguns, including an unregistered .38 caliber handgun that [Appellant] acquired from Cameron Kashmer and which has never been located.

A heavily intoxicated Bonacci was last seen alive in [Appellant's] company as they walked past [Appellant's] own vehicle to Bonacci's Jeep after [Appellant] had arranged to isolate Bonacci in the company of [Appellant] and Dominick. [Appellant] provided the transportation to the secluded murder site, as documented by the University of Scranton surveillance videotape depicting Bonacci's Jeep approaching the Step Falls access road. Twenty-seven minutes later, [Appellant] began contacting Maribeth Castaldi for a ride, and she retrieved [Appellant] and Dominick in close proximity to Step Falls. The wad cutter bullet removed from Bonacci's head had the same lands and grooves measurements and cannelures characteristics as the discharged wad cutter projectiles discovered in [Appellant's] garage. As the Commonwealth aptly notes, it would have been physically impossible for one person to place the fifty pound boulder on the accelerator of Bonacci's vehicle and to shift the Jeep into gear while it was fully engaged, without being trapped in the rapidly descending Jeep or otherwise seriously injured. Finally, at the conclusion of his interrogation by Detective Pappas, [Appellant] admitted that the investigators had "a solid case" and "know what happened."

[Appellant's] post-murder actions designed to deflect attention from him and to conceal the commission of the murder provide further evidence of his intent and state of mind. Immediately following the bloody murder of a purported close

- 2 -

friend, [Appellant] acted perfectly normal, tickled Sean Baress to awaken him, enjoyed a breakfast with friends, and even flirted with their waitress. Knowing full well that Bonacci was dead, [Appellant] placed calls to Bonacci's cell phone, and posted non-private messages on Bonacci's Facebook wall inquiring as to his whereabouts. In his statements, text messages and social media communications with family and friends of Bonacci, [Appellant] feigned ignorance of Bonacci's condition or location and acted as though Bonacci was still alive. [Appellant] attempted to perpetuate that ruse by attending Bonacci's wake and participating in search parties for him.

(Trial Ct. Op., 1/09/15, at 30-31).

On July 20, 2013, the Dunmore Police Department initiated a missing person investigation for Bonacci. (*See* N.T. Trial, 6/11/14, at 39). On July 27, 2013, Bonacci's body was found in the front passenger side of his Jeep Liberty at the bottom of a ravine in the Step Falls area of Scranton, Pennsylvania. (*See id.*). Scranton Police Department detectives found a large rock placed on the accelerator of Bonacci's vehicle and tire acceleration marks above the steep embankment. (*See* N.T. Trial, 6/10/14, at 220-22). While autopsying Bonacci's body, Gary Ross, M.D., retrieved a wad cutter bullet from Bonacci's left posterior neck, which Dr. Ross opined was fired from a gun less than one inch from the wound. (*See id.* at 32, 38, 40). On August 1, 2013, Appellant, and co-conspirator, Dominick, were arrested and charged with the murder of Bonacci.[1]

_____

[1] Originally, Appellant was charged with three counts: criminal homicide, criminal conspiracy to commit homicide, and accomplice liability to the general count of homicide. At the Preliminary Hearing on October 11, 2013, *(Footnote Continued Next Page)*

On December 2, 2013, Appellant filed an omnibus pretrial motion seeking, among other things, a change of venue and individual *voir dire*. The trial court denied Appellant's request for a change of venue without prejudice for Appellant to renew his request based on the responses of the venire during selection reasoning that:

> Any determination as to whether the pre-trial publicity in this case prevents the selection of a fair and impartial jury can only be made based upon the prospective jurors' responses during *voir dire* regarding their exposure to media reports, and their ability to set aside any preliminary opinions that they may have formed and still render a verdict based solely on the evidence....

(Trial Court Opinion, 3/14/14, at 41).

Additionally, with respect to individual *voir dire*, the trial court decided that:

> In accordance with Pa.R.Crim.P. 631(E)(2)(b), the prospective jurors will initially be examined collectively by the undersigned, with members of the venire thereafter being questioned individually depending upon their responses to earlier inquiries. Although the undersigned will take the lead in conducting the collective and individual examination of the prospective jurors, counsel for the Commonwealth and [Appellant] will be afforded the opportunity to pose questions to the jurors as well….

(**Id.** at 42-43)(citation omitted).

*(Footnote Continued)* ——————————

the Commonwealth withdrew the first count, charging that Appellant had fired the gun.  (**See** N.T. Preliminary Hearing, 10/11/13, at 6).

Jury selection for Appellant's trial commenced on June 2, 2013. Throughout the jury selection process, prospective jurors were first questioned collectively by the court, the prosecutor, and defense counsel, and, based upon their responses, certain prospective jurors were thereafter subject to individual *voir dire*. (**See** N.T. Trial, 6/02/13, at 7–110, 139–73).

During *voir dire*, ninety-eight of the 101 prospective jurors acknowledged that they had seen, heard, or read news reports or overhead or participated in any conversations regarding Bonacci's death and the arrest of Appellant. (**See id.** at 14-15). Of these ninety-eight prospective jurors, eighteen indicated that they had fixed opinions based on what they had heard, seen, or read. (**See id.** at 16–19). The trial court dismissed these prospective jurors for cause. (**See id.** at 110-35). An additional four prospective jurors indicated that they had formed fixed opinions as to Appellant's guilt or innocence based on what they had heard, read, saw, or talked about on social media in relation to the case. (**See id.** at 149–51). These four prospective jurors were also stricken for cause. (**See id.** at 158-59).

After jury selection, the trial court denied the defense motion for a change of venue or a change of venire reasoning that:

> Although some members of the panel did indicate that they were exposed to media reports and had formed fixed opinions based on those reports or conversations that they have had, they were excused from the panel and we did have more than enough jurors at the end of the day to select the panel. We have selected [twelve] principal jurors and four alternatives. We

had about ten extra jurors above and beyond that so, therefore, the motion for change of venue or change of venire will be denied.

(*Id.* at 195).

On June 12, 2014, the jury found Appellant guilty of murder of the first degree as an accomplice and guilty of criminal conspiracy to commit murder of the first degree. (*See* N.T. Trial, 6/12/14, at 202–03).  On September 5, 2014, the trial court sentenced Appellant to life imprisonment on Count 1, murder of the first degree, and to not less than twenty nor more than forty years on Count 2, conspiracy to commit murder of the first degree, to be served consecutively.

Appellant filed a post-sentence motion on September 11, 2014, and supplemental post-sentence motion on September 30, 2014.  The trial court conducted oral argument[2] on the post-sentence motions on November 26, 2014.

Appellant timely filed his Rule 1925(b) statement on February 10, 2015.[3]  *See* Pa.R.A.P. 1925(b).  On February 9, 2015, the trial court issued an order in response to Appellant's Rule 1925(b) statement which relied on the memorandum and order dated January 9, 2015.  *See* Pa.R.A.P. 1925(a).

---

[2] A copy of the transcript of the November 26, 2014 oral argument was not included in the certified record.

[3] Appellant's 1925(b) statement was dated February 4, 2015 and filed and docketed on February 10, 2015.

Appellant raises the following questions for our review:

A.      Whether, in a Pennsylvania case of first impression, the trial court abused its discretion in refusing to grant a change of venue/venire in light of the inflammatory and widespread pretrial publicity in this case, particularly the social media including a Facebook page dedicated to the victim, which publicity was presumptively prejudicial to Appellant and because there was no "cooling off" period between the co-defendant's trial–at which he falsely claimed Appellant was the actual shooter–and Appellant's trial?

B.      Whether, in a Pennsylvania case of first impression, the trial court abused its discretion in refusing to allow defense trial counsel to conduct individual *voir dire* of the prospective jurors privately, particularly in light of well-settled law mandating that *voir dire* on prejudice due to pretrial publicity must be done out of the presence of the other jurors and the pervasive and highly prejudicial social media attendant to this case, which was insufficiently explored with the prospective jurors during the limited *voir dire*?

C.      Whether the evidence is insufficient as a matter of law to sustain the guilty verdicts of first-degree murder and criminal conspiracy or, alternatively, the verdicts are against the weight of the evidence because the Commonwealth failed to prove the essential elements of these crimes beyond a reasonable doubt given that mere presence at the scene of a crime alone is not enough to implicate a party in its commission?

D.      Whether the trial court abused its discretion in refusing to preclude the admission of certain "bad acts" evidence against the Appellant at trial where the prejudicial impact of such evidence significantly outweighed any probative value?

(Appellant's Brief, at 6-7) (most capitalization omitted).

In his first issue, Appellant argues that the trial court erred in denying Appellant's motion for a change of venue or change of venire.  (***See id.*** at 16-17).  He claims that the trial court should have found that social media constituted pretrial publicity for purposes of a change of venue request, and

that the social and conventional media coverage of this case was so extensive, sustained, and pervasive, that it should have created a presumption of prejudice. (***See id.***).  We disagree.

Our standard of review is well established:

> An application for a change of venue is addressed to the sound discretion of the trial court, which is in the best position to assess the community atmosphere and judge the necessity for a venue change, and its exercise of discretion will not be disturbed in the absence of an abuse of discretion.  The mere existence of pretrial publicity does not warrant a presumption of prejudice.  If pretrial publicity occurred, its nature and effect on the community must be considered.

***Commonwealth v. Chambers***, 685 A.2d 96, 103 (Pa. 1996), *cert. denied*, 522 U.S. 827 (1997) (citations omitted).

Prejudice will be presumed if a defendant shows that the publicity "(1) was sensational, inflammatory, and slanted toward conviction, rather than factual and objective; (2) revealed the defendant's prior criminal record, if any, or referred to confessions, admissions or reenactments of the crime by the defendant; or (3) derived from official police or prosecutorial reports." ***Commonwealth v. Tharp***, 830 A.2d 519, 529 (Pa. 2003), *cert. denied*, 541 U.S. 1045 (2004) (citations omitted).  If a defendant can prove the existence of one of these circumstances, a change of venue is still not warranted unless "defendant also demonstrates that the pretrial publicity was so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it, and that there was insufficient time

between the publicity and the trial for any prejudice to have dissipated." *Id.* (citation omitted).

Here, Appellant argues that the media coverage in newspapers, television, internet media, relevant Facebook pages, and websites devoted to the Bonacci murder was inflammatory, pervasive, and undeniably prejudicial. (*See* Appellant's Brief, at 18-19). Appellant argues that in addition to conventional media coverage of the murder and trial, the social media generated by the victim's family[4] in particular was "highly emotionally-charged, moving, sensationalistic, pervasive, accessible to and accessed by literally thousands and thousands of viewers in the area, slanted toward [Appellant's] conviction, and ultimately presumptively prejudicial to his right to a fair trial by a fair and impartial jury." (*Id.* at 21).

The trial court denied Appellant's motion for a change of venue holding that he had not demonstrated that the conventional pre-trial news reports caused actual prejudice or that the media coverage was presumptively prejudicial because it was sensational, inflammatory and slanted toward conviction. Furthermore, the trial court held that even if the media coverage was found to be prejudicial, Appellant was not entitled to a change of venue

_____

[4] Appellant refers specifically to the website www.frankiesvoice.org and the Facebook page www.Facebook.com/FrankiesVoice that Bonacci's friends and family created. (*See* Appellant's Brief, at 19).

because he cannot show that the prejudicial publicity saturated the community, reasoning that "[l]ess than 22% of the jury panel stated that as a result of the conventional and social media publicity, they had formed fixed opinions about [Appellant's] guilt or could not otherwise set aside that pre-trial publicity." (*See* Trial Ct. Op., 1/09/15, at 46; *see id.* at 43).

Additionally, the trial court held that even if social media constituted pretrial publicity for the purposes of a change of venue request, Appellant still did not establish that a change of venue was required because the information from social media was not "so extensive, sustained, and pervasive that the community must be deemed to have been saturated with it." (*Id.* at 50; *see id.* at 49).

We conclude that, the trial court did not abuse its discretion in denying Appellant's motion for a change of venue. As the trial court correctly pointed out, less than 22% of the venire persons formed fixed opinions about Appellant's guilt based upon conventional and social media publicity, and all jurors seated avowed that they could decide the case based solely on the trial evidence. *See Tharp*, *supra* at 529-30 (holding that a trial court was warranted in concluding that no change of venue was required where thirty-four of one hundred prospective jurors indicated that they had formed a fixed opinion because of pretrial publicity). Accordingly, the trial court was well within its discretion in deciding that pretrial publicity did not require a change of venue. Appellant's first issue does not merit relief.

Appellant next argues that the trial court abused its discretion in refusing to allow defense counsel to conduct individual *voir dire* of the prospective jurors pursuant to Pennsylvania Rule of Criminal Procedure 631(E)(1)(a) because of the allegedly prejudicial pretrial publicity concerning this matter. We disagree.

> Our Rules provide that in non-capital cases the trial court is vested with discretion in the method by which the *voir dire* examination shall be conducted. Absent an abuse of such discretion, a reviewing court cannot disturb the trial court's actions. Even in cases with pre-trial publicity only a palpable error resulting in abuse of discretion justifies reversal of a denial of individual *voir dire*.

***Commonwealth v. Rovinski***, 704 A.2d 1068, 1073 (Pa. Super. 1997), *appeal denied*, 723 A.2d 1024 (Pa. 1998) (citations and quotation marks omitted).

> Pennsylvania Rule of Criminal Procedure 631 provides in relevant part:
>
> (E) In capital cases, the individual *voir dire* method must be used, unless the defendant waives that alternative. In non-capital cases, the trial judge shall select one of the following alternative methods of *voir dire*, which shall apply to the selection of both jurors and alternates:
>
>> (1) Individual *Voir Dire* and Challenge System
>>
>>> (a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.
>>>
>>> \* \* \*
>>
>> (2) List System of Challenges
>>
>>> \* \* \*

- 11 -

> (b) Prospective jurors may be examined collectively or individually regarding their qualifications. If the jurors are examined individually, the examination may be conducted beyond the hearing and presence of other jurors.

Pa.R.Crim.P. 631(E)(1)(a), (2)(b).

Appellant attempts to analogize his case to ***Commonwealth v. Johnson***, 269 A.2d 752, 757 (Pa. 1970), arguing that the prejudicial pretrial publicity in this matter required each juror to be questioned outside the hearing of the other jurors. (***See*** Appellant Brief, at 37-38). However, in ***Johnson***, the pretrial publicity, which the Pennsylvania Supreme Court decided required individual *voir dire*, included "detailed accounts of appellant's prior record" and deliberately inflammatory remarks by the district attorney. ***Johnson***, ***supra*** at 756.

Upon review of the record, we conclude that this matter is more closely analogous to ***Rovinski***, where this Court held that the trial court did not abuse its discretion when it made a general inquiry into whether any jurors had prior knowledge of the case and then "dismissed any juror with prior knowledge who did not unequivocally deny having a fixed opinion and unequivocally affirm the ability to be fair and impartial." ***Rovinski***, ***supra*** at 1073.

Here, in addition to inquiring as to prior knowledge from any sources (including social media) and dismissing those potential jurors with fixed opinions about the matter, the trial court allowed counsel to conduct

individual *voir dire* with certain jurors who answered that they had prior knowledge about the case. (***See*** N.T. Trial, 6/02/13, at 7–110, 139–73).

Accordingly, the trial court's method of *voir dire* was well within its discretion in this matter. Appellant's second issue does not merit relief.

Appellant's next argument is two-fold. First, he argues the evidence presented at trial is insufficient as a matter of law to sustain the guilty verdict, and in the alternative, he argues that the verdicts are against the weight of the evidence. (***See*** Appellant's Brief, at 48-62). We disagree.

Upon review of the record, we conclude that Appellant has waived his argument that the verdict is against the weight of the evidence. Appellant failed to distinguish between his sufficiency and weight of the evidence claims and to provide any separate legal argument in support of the weight of the evidence issue. (***See id.***) Accordingly, we deem his weight of the evidence issue waived.[5] ***See Commonwealth v. Birdseye***, 637 A.2d 1036, 1039-40 (Pa. Super. 1994), *affirmed*, 670 A.2d 1124 (Pa. 1996).

Our standard of review for a challenge to the sufficiency of evidence is well-settled:

_____

[5] Moreover, after a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial on the basis that the verdict is against the weight of the evidence. We agree that the evidence of Appellant's guilt was not so conjectural and equivocal that the jury's guilty verdict shocked the conscience of the court. ***See*** Trial Ct. Op., 1/09/15, at 37-39; ***see also Commonwealth v. Childs***, 63 A.3d 323, 327 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Harden**, 103 A.3d 107, 111 (Pa. Super. 2014) (citations omitted).

Here, the jury found Appellant guilty of murder of the first degree under an accomplice liability theory, in violation of 18 Pa.C.S.A. §§ 2501(a), 2502(a) and criminal conspiracy to commit murder of the first degree in violation of 18 Pa.C.S.A. § 903(c).

To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant did the killing, and the defendant

- 14 -

acted with a specific intent to kill. Moreover, the jury may convict the defendant as an accomplice so long as the facts adequately support the conclusion that he or she aided, agreed to aid, or attempted to aid the principal in planning or committing the offense, and acted with the intention to promote or facilitate the offense. The amount of aid need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime. However, simply knowing about the crime or being present at the scene is not enough. In evaluating whether the evidence was sufficient to support the conviction, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

*Commonwealth v. Markman*, 916 A.2d 586, 597-98 (Pa. 2007)

(citations and quotation marks omitted).

To prove conspiracy, the trier of fact must find that: 1) the defendant intended to commit or aid in the commission of the criminal act; 2) the defendant entered into an agreement with another to engage in the crime; and 3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators. In the case of a conspiracy to commit homicide, each member of the conspiracy can be convicted of first-degree murder regardless of who inflicted the fatal wound.

*Commonwealth v. Johnson*, 985 A.2d 915, 920 (Pa. 2009), *cert. denied*,

562 U.S. 906 (2010) (citations and quotation marks omitted).

Here, Appellant argues that "evidence of an accused's mere presence

at the scene of the crime, standing alone, cannot establish guilt beyond a

reasonable doubt, and [the fact] that Appellant did not disclose the murder to the police is hardly evidence of guilt (as opposed to a mistake in judgment or moral/ethical lapse)." (Appellant's Brief, at 41). Further, Appellant argues that the evidence shows that he and Bonacci were friends and that he would have no motive to kill Bonacci. (*See id.* at 40). We disagree.

The evidence presented by the Commonwealth at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, revealed that Appellant and Dominick intended to and entered into an agreement to unlawfully kill Bonacci, Dominick killed Bonacci in furtherance of this agreement, and Appellant's actions aided Dominick in killing Bonacci. Appellant's participation included providing Dominick with a gun and bullets; driving Bonacci and Dominick down a dirt road to the murder site; helping Dominick roll a rock onto the accelerator of the vehicle to cause it to drive down an embankment after the shooting; and making false statements to others, including police, in an attempt to deflect attention and conceal the commission of the murder. (*See* N.T. Trial, 6/03/14, at 115, 136, 187-88, 247-49; N.T. Trial, 6/05/14, at 7-13, 29-30, 47-48; N.T. Trial, 6/09/14, at 28-196; N.T. Trial, 6/10/14, at 123-29, 193, 203-24, 260-84; N.T. Trial, 6/11/14, at 4-24).

These facts are sufficient to sustain a finding that Appellant acted in aid of his co-conspirator Dominick in unlawfully killing Bonacci, and did so with the intent to promote or facilitate his murder. *See Johnson*, *supra* at

920; *Markman*, *supra* at 597-98. Accordingly, Appellant's conviction for murder of the first degree and conspiracy to commit murder of the first degree are supported by sufficient evidence. *See Harden*, *supra* at 111. Appellant's third issue does not merit relief.

Finally, Appellant contends that the trial court abused its discretion in admitting "bad acts" evidence. (*See* Appellant's Brief, at 62-70). We disagree.

"The admission of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Commonwealth v. Begley*, 780 A.2d 605, 620 (Pa. 2001) (citations omitted). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Martinez*, 917 A.2d 856, 859 (Pa. Super. 2007) (citations omitted).

Under Pennsylvania Rule of Evidence 404(b),

evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009), *cert. denied*, 559 U.S. 1111 (2010) (citing Pa.R.E. 404(b)(1) and (2)).

Here, the trial court admitted evidence of Appellant's acquisition of a .38 caliber handgun, a photograph of Appellant displaying a handgun in the waistband of his pants, and Appellant's ownership and discharge of wadcutter bullets pursuant to the "opportunity" provision in Pa.R.E. 404(b)(2). (*See* Trial Ct. Op., 1/09/15, at 62). The trial court reasoned that such evidence was admissible under the "opportunity" exception to establish that Appellant had the means to provide Dominick with the gun and bullets used to kill Bonacci. (*See id.* at 63).

The trial court's admission of the evidence of Appellant's acquisition of a .38 caliber handgun, possession of guns and bullets similar to the ones used to kill Bonacci, and a photograph of Appellant displaying a handgun in the waistband of his pants was well within its discretion. *See Commonwealth v. Williams*, 640 A.2d 1251, 1260-61 (Pa. 1994) (affirming admission of evidence showing a weapon in defendant's possession where it tended to prove that defendant had a weapon similar to the one used in perpetration of the crime).

Appellant next contends that the admission of the "b'hai" tattoos of Appellant and Dominick were irrelevant and highly prejudicial because the Commonwealth allegedly introduced this to show that he and Dominick were gang members. However, Appellant did not object to admission of the "b'hai" tattoos either before or during trial, and accordingly has not

- 18 -

preserved the claim of error. *See* Pa.R.E. 103(a); Pa.R.A.P. 302(a) (issues cannot be raised for first time on appeal). As such, this claim is waived on appeal. ***See Commonwealth v. Parker***, 847 A.2d 745, 749-50 (Pa. Super. 2004).

Finally, Appellant contends that evidence of his demeanor during breakfast at Chick's Diner within hours of the murder should have been precluded because it had no relevance other than prejudicing Appellant before the jury. (***See*** Appellant's Brief, at 66). The trial court permitted such evidence, holding that it was admissible to demonstrate Appellant's conscious effort to divert focus of the investigation from himself and to conceal his involvement in Bonacci's murder. (***See*** Trial Ct. Op., 1/09/15, at 66).

The law does not require a court "to sanitize [a] trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa. Super. 2009) *appeal denied*, 74 A.3d 125 (Pa. 2013) (citation omitted). Based on the foregoing, we conclude that the trial court properly exercised its discretion when it allowed testimony regarding Appellant's actions in the diner within a few hours of the murder. ***See Begley***, ***supra*** at 620; ***Martinez***, ***supra*** at 859. Accordingly, Appellant's fourth issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015