617 A.2d 8

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Roger A. MOORE.**

**COMMONWEALTH of Pennsylvania**

v.

**Roger A. MOORE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1992.

Filed Nov. 18, 1992.

486

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com.

Melaine S. Rothey, Pittsburgh, for Roger A. Moore.

Before ROWLEY, President Judge, and POPOVICH and CERCONE, JJ.

ROWLEY, President Judge:

Both the Commonwealth and Roger A. Moore (hereinafter "defendant") have appealed the Judgment of Sentence imposed following a waiver trial in which the defendant was found guilty of the following offenses: homicide by vehicle and involuntary manslaughter, driving under the influence, recklessly endangering another person, driving while operator's privileges suspended, failure to drive on right side of highway, and reckless driving. In its appeal, the Commonwealth vehemently argues that the sentence imposed, although within the sentencing guidelines, is excessively lenient and "clearly unreasonable" under all the facts and circumstances of this case. The defendant has appealed his sentence on the basis of allegedly erroneous evidentiary rulings made by the trial court during his trial and on the theory that the evidence proffered

by the Commonwealth was insufficient to sustain the defendant's conviction in several particulars. After a very careful review of the record and the law, we vacate the judgment of sentence and remand to the trial court for resentencing.

The facts giving rise to these cross-appeals follow. On December 24, 1990, Elizabeth Henry and her husband, Henry, went to Christmas Eve services at their church. When they returned home, they neglected to turn their car lights off. At about 9:20, Mrs. Henry realized their car lights were still on and she decided to take the car, a 1974 Dodge Dart, for a drive to recharge the battery.

Mrs. Henry was driving below the speed limit, at approximately 40 miles per hour, on Route 366 towards New Kensington when another vehicle, driven by a Michael Selerud, attempted to pass Mrs. Henry in a properly marked passing zone. Just as he was about to move his vehicle around Mrs. Henry's, he saw the defendant's "pick-up [truck] come around the bend in the road coming in ... [his] direction ... cross the center line and hit [Mrs. Henry's] car head on." (Reproduced Record, 105a, 106a, 114a). Mrs. Henry (hereinafter "victim") was killed instantly by blunt force trauma to her head and chest. Mr. Selerud braked his vehicle to a halt before impacting the victim's car. The defendant, whose driver's license had previously been suspended, was found lying on the front seat of his truck mumbling unintelligibly. An empty quart bottle of Colt .45 Malt Liquor, an empty quart bottle of Bacardi Rum, and a pint bottle of Bacardi Rum in a brown paper bag were also found on the passenger side floor of the defendant's truck. A case of beer had been thrown out of the bed of the defendant's truck on impact.

A Traffic Safety Training Specialist, Officer Sims, arrived at the scene at approximately 9:48 p.m. in response to a call for assistance from several officers who had come upon the accident minutes after it's occurrence. Officer Sims observed all three vehicles involved in the incident and spoke with the officers at the scene. He also talked to the defendant in the ambulance. As a result of his observations at the scene and his conversation with the defendant, Officer Sims "asked

[another officer] to follow the ambulance to the hospital and obtain a blood alcohol sample." (Reproduced Record, 219a). The defendant's blood was tested at the Allegheny County Toxicology Department and a .15 blood alcohol content was revealed. Cocaine was also detected in the defendant's blood.

Despite a motion to suppress filed by the defendant, the trial court received the blood test as evidence. Also at trial, Officer Sims testified that based upon his discussion with the eye witness, Mr. Selerud, and the measurements taken at the scene, it was his opinion that a portion of the defendant's vehicle had already crossed the center yellow line *before* he started to brake and that his skid marks began some *two hundred feet after* a patch of ice in the roadway. Based on this evidence, the trial court, sitting as fact-finder, concluded that the defendant unintentionally caused Mrs. Henry's death while violating the Motor Vehicle Code (homicide by vehicle) in a reckless or grossly negligent manner (involuntary manslaughter). The court also concluded that he was guilty of driving under the influence of alcohol and of several related summary violations.

To aid the trial court in sentencing the defendant, an extensive pre-sentence report was compiled which indicated that the defendant "has violated most of the probations he has been granted in Westmoreland County," "has displayed a pattern of irresponsibility throughout his adult life," and "is in need of severe corrective measures before he causes another similar tragedy." (Reproduced Record, 399a–414a). The report also indicates that the defendant has abused alcohol and cocaine for some time, yet continues to deny any substance abuse problems. While awaiting trial on the charges relevant to this appeal, the defendant was arrested for possession of cocaine and drug paraphernalia in Westmoreland County. (Reproduced Record, 399a–414a).

In addition to the pre-sentence report entered into evidence for sentencing purposes, a copy of the defendant's driving record was proffered to the sentencing court. That record revealed that the defendant has had a long history of motor vehicle violations in this Commonwealth which, due to their

summary nature, were not reflected in the defendant's prior record score. Totaling fifteen in number, the defendant's driving record is composed of seven moving violations, four driving without a license or under suspension violations, and four miscellaneous violations. Of course, said driving record also reveals the fact that the defendant was driving while under suspension at the time of the December 24, 1990 incident.

■ Before turning to the merits of the arguments presented herein, we must consider whether this appeal is properly before us. An appeal of the discretionary aspects of a sentence is not guaranteed as of right. Rather, "allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under [the Sentencing Code]." 42 Pa.C.S.A. § 9781(b).

"Additionally, Pa.R.A.P. 2119(f) commands that: [a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence."

*Commonwealth v. Tuladziecki*, 513 Pa. 508, 511–512, 522 A.2d 17, 19 (1987).

The Commonwealth has complied with the mandate of *Tuladziecki* and therefore, we must ascertain whether a substantial question has been raised as to the propriety of the defendant's sentence. In *Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115 (1987), this Court noted that the determination of whether a particular issue constitutes a substantial question must be evaluated on a case-by-case basis but that it would "be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms

which underlie the sentencing process." *Id.* at 201 n. 7, 535 A.2d at 119 n. 7.

In the instant appeal, the Commonwealth has raised a claim that the sentence imposed in this case was contrary to the fundamental norms underlying the sentencing process *and* was inconsistent with the Sentencing Code. We conclude that this claim is colorable. The 2119(f) statement filed by the Commonwealth enumerates several aggravating factors which indicate to us that the defendant's lack of intent may have been given unduly substantial weight by the court in fashioning the defendant's sentence while his pattern of overall irresponsibility and flagrant disregard for highway safety may not have been given enough weight. Therefore, we conclude that the Commonwealth presents us with a substantial question as to the suitability of the sentence imposed in this case.

■ A sentencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime. However, the choices *must* be "consistent with the protection of the public, the gravity of the offense, *and* the rehabilitative needs of the defendant." *Commonwealth v. Devers,* 519 Pa. 88, 92, 546 A.2d 12, 13 (1988) (emphasis added).

In *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985), we noted that:

"[t]he legislature has provided that the appellate court, in reviewing the discretionary aspects of a sentence on appeal, shall affirm the trial court's sentence unless it finds: (1) that the guidelines were erroneously applied; (2) that the sentence, even though within the guidelines, is "clearly unreasonable"; or (3) that the sentence, if outside the guidelines, "is unreasonable." In any one of these three circumstances, we are required to vacate the trial court's sentence and remand the case with instructions. 42 Pa.C.S.A. § 9781(c). In determining whether a particular sentence is "clearly unreasonable" or "unreasonable," the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the

pre-sentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence."

*Id.* at 473, 491 A.2d at 1354.

In the instant case, we conclude that the guidelines were erroneously applied by the sentencing court because the defendant was twice given the benefit of one particular mitigating factor, the defendant's lack of intent to cause the victim's death. The intent element was figured into the defendant's sentence via his offense gravity score for *unintentionally* and *involuntarily* causing Mrs. Henry's death. It was then given weight by the court in sentencing the defendant to his mitigated eighteen to sixty month period of incarceration. Therefore, the weight given to the mitigating factor of intent was undue and the sentence is contrary to law. *Drumgoole* at 475, 491 A.2d at 1355 [1].

Moreover, we agree with the Commonwealth's argument that the *Drumgoole* rationale also demands the conclusion that aggravated, rather than mitigated, weight should have been given to the defendant's substance abuse violations and his extensive prior Motor Vehicle Code violations, both of which went unnoticed in computing the defendant's prior record score under the Sentencing Guidelines. While cognizant of the *Devers* presumption that a sentencing court has considered relevant factors and weighed those factors in a

1. In *Drumgoole,* we held that it was error for a sentencing court to consider a defendant's lack of a prior record in choosing between the standard, mitigated and aggravated ranges in formulating an appropriate sentence because "the guidelines inherently give credit to those who have led a relatively law-abiding life." Therefore, assignment of the lack of, or even a minimal, prior record as a reason for fashioning a particular sentence impermissibly gives a defendant credit for the same factor twice.

In that case, we vacated the defendant's sentence and remanded for resentencing. In the instant appeal, the *Drumgoole* rationale compels a similar result; we conclude that the element of intent was improperly considered twice by the trial court in sentencing the defendant. The defendant's eighteen to sixty month sentence must be vacated for resentencing.

meaningful fashion if a pre-sentence report exists, we believe this presumption is rebuttable.

In *Commonwealth v. Masip*, 389 Pa.Super. 365, 567 A.2d 331 (1989), we vacated and remanded an unreasonably lenient sentence despite the *Devers* presumption because the sentence did not reflect the uncontradicted evidence of aggravating factors in the pre-sentence report. Citing *Devers*, we stated that "[a] pre-sentence report constitutes part of the record and speaks for itself. It is presumed to be valid and need not be supported by evidence unless and until it is challenged by the defendant." *Id.* at 374, 567 A.2d at 336. Because the pre-sentence report "speaks for itself," there is no room for interpretation as to what it says.

Consequently, we concluded in *Masip*, as we do in the instant case, that "it is apparent that [a]lthough the court here had the pre-sentence report before it and was cognizant of its contents, it is equally obvious that it failed to properly analyze the four factors delineated in [42 Pa.C.S.A. § 9781(d) ] and did not correctly consider and weigh all relevant factors ..." *Id.* at 374, 567 A.2d at 336. In this appeal, the pre-sentence report says to us that the defendant's repeated, continuous motor vehicle and substance abuse violations so adversely impact the protection of the public and the rehabilitative needs of the defendant that they could not have been properly weighed, together with all the other facts and circumstances of this case, prior to the trial court's imposition of defendant's mitigated sentence [2]. Thus, we must vacate the defendant's judgment of sentence and remand for resentencing.

■ We now move to the defendant's allegations of trial court error. First, the defendant claims that the trial court erred in denying his motion to suppress the results of a blood alcohol test performed on a blood sample taken from the defendant by hospital personnel at the direction of the police. He asserts that the sample was "an unlawful search and

2. Moreover, we are of the mind that the trial court gave undue weight to the ephemeral display of remorse expressed by the defendant at sentencing in light of the uncontradicted record evidencing his repeated and egregious disregard for the law.

seizure which violated the Fourth Amendment to the United States Constitution and [therefore] the blood sample should have been suppressed" in that his injuries prevented him from understanding that he had a right to refuse to provide the sample under 75 Pa.C.S.A. § 1547(a).

When reviewing the findings of a suppression court where the challenged evidence was admitted, this Court must consider all of the evidence of the prosecution's witnesses and only so much of the evidence for the defense which, as fairly read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hubble*, 509 Pa. 497, 503, 504 A.2d 168, 171 (1986). In *Commonwealth v. Eliff*, 300 Pa.Super 423, 446 A.2d 927 (1982), this Court stated that in considering a suppression motion:

[t]he suppression court must make findings of fact and conclusions of law in determining whether the evidence was obtained in violation of the defendant's rights. The burden of probing the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure, and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence. Pa.R.Crim.P. 232(h). On appeal, we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact. (citations omitted).

*Id.* at 428, 446 A.2d at 929.

In its opinion, the trial court reiterated the findings which it made at the suppression hearing, as follows:

The [suppression c]ourt found that the circumstances surrounding the accident and subsequent police investigation would reasonably warrant a police officer to conclude that the [d]efendant was operating a motor vehicle while under the influence of alcohol. . . . The manner in which the defendant was found in and of itself indicated that he was driving the vehicle and that alcohol was present in, on or around the [d]efendant. Viewing the totality of the circum-

stances, this [suppression c]ourt is of the opinion that the results of the blood test were properly admissible as the test was not taken in violation of [the d]efendant's Constitutional rights.

(Trial Court Opinion, 3/19/92, page 5). After a thorough review of the record, we conclude that these findings are adequately supported. Therefore, even if the blood test was non-consensual, it was a reasonable search incident to defendant's arrest. *See: Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

■ Moreover, in *Commonwealth v. Molino,* 406 Pa.Super. 66, 593 A.2d 872 (1991), *alloc. granted,* 529 Pa. 618, 600 A.2d 535 (1991), this Court recently held that the taking of a blood sample, despite a defendant's refusal pursuant to § 1547(b)(1), has no bearing upon the admissibility of the blood alcohol content at trial because the right to refuse the test is statutory rather than constitutional in nature. Section 1547 simply does not preclude the admission into evidence of blood test results obtained in contravention of the defendant's right to refuse under that section. Therefore, it is irrelevant under the *Molino* rule whether the defendant did or did not knowingly consent to the blood test pursuant to the inconsistent implied consent provisions of this Commonwealth in the instant case. The trial court properly admitted the test into evidence.

■ Next, the defendant challenges the trial court's ruling concerning the testimony of the Commonwealth's expert in the fields of pharmacology and toxicology, Dr. Wagby Wahba. The defendant claims that his motion to strike Dr. Wahba's testimony should have been granted on the grounds of irrelevancy. Specifically, the defendant argues that the generalized discussion by Dr. Wahba of the physiological effects of alcohol on an individual with a .15 blood alcohol was irrelevant in that it was not specific to this defendant and also because the witness was unable to determine whether the defendant's blood alcohol level at the time of the collision was higher or lower than the blood alcohol content of the specimen drawn one and one-half hours after the incident.

We note several legal precepts which guide us in addressing these claims. "To be relevant, evidence need not establish a probability that the defendant committed a crime, but only a possibility that he did. How much weight to accord the inference is a question solely for the trier of fact." *Commonwealth v. Yarris*, 519 Pa. 571, 589, 549 A.2d 513, 522 (1988), *cert. denied, Yarris v. Pennsylvania*, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 708 (1989). And, of course, a trial court's ruling on evidentiary questions is within the sound discretion of that court and will not be reversed on appeal absent a clear abuse of discretion. *Commonwealth v. Holloway*, 524 Pa. 342, 354, 572 A.2d 687, 693 (1990).

As noted in the Commonwealth's brief, the testimony of the Commonwealth's expert was circumscribed by the trial court to the following topics: (1) verification that the expert had analyzed the defendant's blood sample; (2) verification that the results of the blood test revealed his blood alcohol level was .15; and (3) a generalized discussion of the physiological effects which alcohol has on the sensory, motor, and judgment functions in humans. The trial court concluded that Dr. Wahba's testimony was relevant and proper in that the witness had a reasonable pretension to specialized knowledge regarding the effects of alcohol on the human body and that his expert testimony bore upon a matter in issue at trial (i.e., whether or not the defendant was or was not driving while under the influence of alcohol). The trial court did not err in receiving the limited expert testimony presented in this case.

Finally, we address the defendant's argument that the evidence was insufficient to sustain his convictions of homicide by vehicle and involuntary manslaughter in that "the Commonwealth failed to prove that [the defendant] caused the death of Mrs. Henry while violating a motor vehicle law or while doing either a lawful or unlawful act in a reckless or grossly negligent manner." In so doing, we note that our standard in determining whether evidence is sufficient to sustain a verdict is, as follows:

> Wh[en] accepting as true all the evidence viewed in the light most favorable to the Commonwealth, together with all

reasonable inferences therefrom, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Gamber*, 352 Pa.Super. 36, 44, 506 A.2d 1324, 1329 (1986).

This Court has previously held that evidence that a defendant allowed his vehicle to cross the center line and enter the lane of traffic for oncoming vehicles and that his blood alcohol was .09 percent was sufficient to support a conviction for homicide by vehicle. *Commonwealth v. Eichelberger*, 364 Pa.Super. 425, 528 A.2d 230 (1987). Likewise, in *Commonwealth v. Otis*, 364 Pa.Super. 464, 528 A.2d 249 (1987), *alloc. granted*, 518 Pa. 625, 541 A.2d 1136 (1988), this Court held that it was error for the trial court to summarily dismiss criminal charges against a defendant where there was evidence that he crossed the center line while driving and killed two people in an oncoming vehicle; it was determined that the evidence was sufficient for a factfinder to infer the defendant's criminal negligence.

In the present case, the trier of fact found that the elements of homicide by vehicle and involuntary manslaughter were sufficiently proven. In that regard, the trial court opined, as follows:

The testimony of an eyewitness to the accident, Michael Selerud, as well as the testimony of James A. Sims, Plum Borough Police Officer and [the] Commonwealth's reconstruction expert, demonstrated that the [d]efendant's vehicle crossed the center line of the road before impacting the victim's vehicle. The [c]ourt was satisfied that the Commonwealth proved to the degree necessary that [the d]efendant's vehicle crossed the center line and impacted the victim's vehicle in the victim's lane of travel.... the [c]ourt ... was satisfied that the Commonwealth had shown sufficient evidence to support a conviction for Involuntary Manslaughter and Homicide by Vehicle.

(Trial Court Opinion, 3/19/92, pages 7–8). Accepting as true all of the evidence presented by the Commonwealth and the

uncontradicted defense evidence, we conclude that the factfinder's verdict was adequately supported by the record.

Accordingly, we affirm the trial court's conclusions regarding defendant's assignments of error but we vacate the judgment of sentence and remand for resentencing based on our determination that the trial court did not properly analyze and weigh all factors relevant to the fashioning of the defendant's sentence.

Judgment of sentence vacated and case remanded for resentencing. Jurisdiction is relinquished.