J-S37026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TOBY J. SHAFFER, | |
| Appellant | No. 1517 WDA 2015 |

Appeal from the Judgment of Sentence September 21, 2015
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0002760-2014

BEFORE:  GANTMAN, P.J., SHOGAN and LAZARUS, JJ.

MEMORANDUM BY SHOGAN, J.:                           **FILED JUNE 10, 2016**

Appellant, Toby J. Shaffer, appeals from the judgment of sentence entered on September 21, 2015, in the Erie County Court of Common Pleas.[1] We affirm.

Following a physical altercation involving Del Birch ("Birch") and Appellant on July 27, 2014, in the City of Erie, Appellant was charged with

---

[1] To the extent Appellant purports to appeal from the September 15, 2015 order denying his post-sentence motion, we note that in a criminal context, an appeal properly lies from the judgment of sentence, not an order denying post-sentence motions. ***See Commonwealth v. Dreves***, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*) (in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of a post-sentence motion).  The caption correctly reflects that the appeal is taken from the judgment of sentence, as amended by the September 21, 2015 order. ***See Commonwealth v. Veon***, 109 A.3d 754, 763 (Pa. Super. 2015) (appeal properly lies from the amended judgment of sentence.).

one count of aggravated assault and two counts of robbery. Information, 11/21/14, at 1-2. The Commonwealth withdrew the second robbery count, and a jury found Appellant guilty of the aggravated assault charge and not guilty of the remaining robbery charge.

Appellant was sentenced on July 1, 2015, to a minimum of 60 months and a maximum of 120 months of incarceration. N.T., 7/1/15, at 21. On July 13, 2015, the trial court granted Appellant's motion for extension of time within which to file a post-sentence motion. Appellant filed his post-sentence motion seeking: a lesser jail sentence; entry of a judgment of acquittal because the Commonwealth had not met its burden of proof; and a new trial on the basis that the jury's verdict was inconsistent because it found Appellant guilty of aggravated assault and not guilty of robbery. Motion for post-sentence relief, 9/8/15, at 1-3. The trial court denied Appellant's post-sentence motion by order entered September 15, 2015.

On September 18, 2015, Appellant filed a motion to correct sentence, referencing the error in the July 1, 2015 sentencing order that indicated Appellant was sentenced to serve a maximum sentence of 127 months, as opposed to the 120 months imposed at the sentencing hearing on July 1, 2015. Motion to correct sentence, 9/18/15. The trial court issued an amended sentencing order, entered September 21, 2015, properly reflecting the 120-month maximum sentence. Appellant filed a timely notice of appeal

on September 30, 2015. The trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

The verdict in this case was against the weight of the evidence in that the jury's verdicts were inconsistent and the evidence presented regarding the victim's role in the incident must not have been considered by the jury[.]

The sentence in this case was manifestly excessive and clearly unreasonable when the court sentenced [Appellant] to a period of state incarceration and did not take into account many of the mitigating factors presented by [Appellant] at the time of sentencing[.]

Appellant's Brief at 2 (full capitalization omitted).

In his first issue, Appellant argues that the verdict in this case was against the weight of the evidence in that the jury's verdicts were inconsistent. Appellant's Brief at 7. Appellant avers that because the jury found him not guilty of the robbery, they must have "determined that he did not inflict serious bodily injury upon another for purpose of the robbery, which goes against the verdict that he was guilty of aggravated assault." *Id.* at 8. Appellant maintains that "the jury's verdict shocks the conscience, considering the evidence presented at trial." *Id.* Appellant posits that the facts in this case were so unreliable and contradictory that the verdict of guilty should be vacated. *Id.* at 10.

The law pertaining to weight-of-the-evidence claims is well settled. The weight of the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the

credibility of the witnesses. ***Commonwealth v. Forbes***, 867 A.2d 1268, 1272–1273 (Pa. Super. 2005). The grant of a new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. ***Commonwealth v. Bruce***, 916 A.2d 657, 665 (Pa. Super. 2007). Rather, the role of the trial judge is to determine that, notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. ***Id.*** An appellate court's purview:

> is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Knox***, 50 A.3d 732, 738 (Pa. Super. 2012) (internal citations omitted). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. ***Forbes***, 867 A.2d at 1273. "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–880 (Pa. 2008).

The following testimony was presented at trial. Birch testified that he had been associated with the East Bayfront Neighborhood Watch in Erie County since 1993, and was at the time of trial, the co-coordinator for it. N.T., 5/11/15, at 20-21. Birch explained that it is the neighborhood watch's

protocol simply to gather information and avoid confrontations. *Id.* at 22-23. At the time of trial, Birch was sixty-two years old. *Id.* at 19. Birch also asserted that he was five foot, eight and one-half inches tall, and weighed 160 to 165 pounds. *Id.* at 23.

Birch testified that on July 27, 2014, at approximately 9:00 a.m., he received a phone call from a concerned individual regarding a suspicious white van parked behind a house in the 700 block of East Fourth Street. N.T., 5/11/15, at 24. Birch advised the caller that he would go to that location and take photographs to provide to "city hall." *Id.* at 24-25. Birch proceeded to the 700 block of East Fourth Street where he observed a van parked behind the house and backyard of 720 East Fourth Street. *Id.* at 25-26. Birch took three photographs of the van. *Id.* at 27-28. As Birch was taking the third photograph, Appellant exited the van and confronted Birch. *Id.* at 29-30. Appellant asked Birch what he was doing and stated that he was parked legally. *Id.* at 30. Birch testified that he introduced himself and indicated that he was with the East Bayfront Neighborhood Watch. *Id.* at 31. Birch explained that Appellant was angry and immediately went into "attack mode," grabbing him and placing him in a bear hug. *Id.* at 31. Appellant kept asking Birch what he had in his pocket. *Id.* at 31. Appellant patted Birch down. *Id.* at 34. Birch testified that Appellant had Birch on his back on the ground, and Appellant had both hands around Birch's neck, choking him. *Id.* at 34. Appellant threatened Birch, directing him to not

make a sound, while Appellant was slamming the left side of Birch's face down onto the ground repeatedly. *Id.* at 36. During this altercation, Appellant was on top of Birch. *Id.* at 37. Appellant then began to yell for help, asserting that he had been attacked. *Id.* at 38. A neighbor, Vincent DeSanto, came over to the two, and at that point, Appellant released Birch. *Id.* at 38.

The Commonwealth and Appellant agreed that Birch sustained serious bodily injury as a result of the confrontation. *Id.* at 46-47. The parties also stipulated to the following diagnosis of Appellant's injuries: "there was a large blowout fracture of the left orbital floor with inferior extension of the intraorbital fat and the left inferior rectus muscle as well as a communicated fracture of the anterior wall of the left maxillary sinus." *Id.* at 47.

Vincent DeSanto also testified at trial. N.T., 5/11/15, at 74. Mr. DeSanto testified that on the morning of July 27, 2014, he heard a commotion and someone yelling for help, so he went to investigate. *Id.* at 74-78. Mr. DeSanto saw two individuals, one on top of the other. *Id.* at 77. Mr. DeSanto recognized the individual on the ground as Birch. *Id.* at 78. He testified that when he observed Birch's face, it was bloody. *Id.* at 78. When Mr. DeSanto approached the individuals, he directed the individual on top of Birch to "let [Birch] up." *Id.* at 79. The individual on top got off of Birch, and Birch was able to stand up and walk away. *Id.* at 79. Mr. DeSanto identified Appellant as the individual who was on top of Birch. *Id.*

at 79. Mr. DeSanto testified that Appellant entered his vehicle and immediately left the scene. *Id.* at 80.

Appellant also testified. At the time of trial, Appellant was forty-six years old and weighed 220 pounds. N.T., 5/11/15, at 119, 138. Appellant stated that on the morning of July 27, 2014, he had parked his van on property behind 720 East Fourth Street in the City of Erie. *Id.* at 109, 120. Appellant explained that he was there to pick up his son, and had arrived early, so he parked his van behind the house. *Id.* at 120-122. Appellant testified that he had parked there often in the summer of 2014, and had permission to park there from the property owner, Pam Miller, the mother of his children. *Id.* at 121. While he was in his van, Appellant saw an individual he did not recognize, later identified as Birch, taking pictures. *Id.* at 123. Appellant testified that Birch got close to the van door. *Id.* at 125. Appellant explained that he quickly exited the van and asked Birch what he was doing. *Id.* at 125. Appellant posits that at that moment, Birch placed his hand in his pocket. *Id.* at 125. Appellant explained: "When I saw that, that's when I grabbed him, because in that neighborhood, I'm playing no games. That was it. Once he did that, my initial thought was that he came there to cause trouble." *Id.* at 125. Appellant expressed his thought process after Birch placed his hand in his pocket as follows: "[t]here could have been three things that he had in his pocket[:] a taser, gun or a knife. All three things could have took [sic] me out real quick." *Id.* at 126.

Appellant testified that "I estimate that it was five minutes that I sat there and held him down." *Id.* at 126. Furthermore, Appellant acknowledged that he "wrestled with him on the ground, . . . in a very frantic way." *Id.* at 134. Appellant conceded that he caused Birch's injuries, but testified he was compelled to hurt Birch in self-defense. *Id.* at 145. Appellant did not contest that Birch suffered serious bodily injury as a result of this incident. *Id.* at 145-146.

In this case, the trial court concluded that the weight of the evidence supported the jury's verdict of guilty of aggravated assault. The trial court provided the following explanation for its decision:

> The jury's verdict was not against the weight of the evidence. There were compelling facts presented, particularly by the victim, as to the fact the defendant was the physical aggressor, inflicted a severe beating upon the much smaller victim and caused significant injuries to him. Medical records, exhibits and testimony corroborated such, and even if some of the verdicts were inconsistent, under the law and facts of this case such were inconsequential. The jury's verdict in light of the evidence does not shock one[']s sense of justice or the conscience of the Court.

Trial Court Opinion, 10/13/15, at 1.

The jury, sitting as the finder of fact, was free to believe all, part, or none of the evidence against Appellant, as was its right. The jury weighed the evidence and concluded Appellant perpetrated the crime of aggravated assault. Indeed, Appellant acknowledged that he caused Appellant's significant injuries, although he argued that due to fear for his own safety, he caused those injuries while defending himself. The jury did not find

Appellant's versions of the events credible. This determination is not so contrary to the evidence so as to shock one's sense of justice. Thus, we decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence.

Furthermore, we do not agree with Appellant's conclusion that if the jury found him not guilty of robbery, it must have determined that he did not inflict serious bodily injury to Appellant. The reasonable, alternate explanation for that determination would be simply that the jury did not believe that Appellant caused those injuries in the **course of a theft**. Indeed, Appellant acknowledged and the parties stipulated to the fact that Birch sustained serious bodily injury as a result of the confrontation. Accordingly, we conclude that the trial court did not abuse its discretion in determining that Appellant's weight of the evidence claim lacked merit. Thus, this claim fails to provide Appellant relief.

In his next issue, Appellant asserts that the trial court abused its discretion in sentencing him to a lengthy term of incarceration given the mitigating factors of this case. Appellant's Brief at 10. Specifically, Appellant contends that he did not initiate the altercation; he had a low prior record score and the support of his family members; he had three children, one of whom has special needs; he apologized for his actions and showed remorse; the victim did not follow neighborhood watch protocol; and the trial court received numerous letters on his behalf from family and friends.

*Id.* at 11. Appellant further argues that the trial court sentenced him in the high end of the standard range without stating sufficient reasons on the record. *Id.* at 12. Thus, Appellant is purporting to present a challenge to the discretionary aspects of his sentence.

We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only

when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. ***Commonwealth v. Sierra***, 752 A.2d 910, 912–913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met: Appellant brought a timely appeal, raised the challenges in a post-sentence motion, and included in his appellate brief the necessary separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

In his Pa.R.A.P. 2119(f) statement, Appellant argues that his sentence was manifestly excessive in that it was not individualized, and that it violated 42 Pa.C.S. § 9781. Appellant's Brief at 5. Additionally, Appellant asserts that he was given a sentence in the aggravated range of the sentencing guidelines without the trial court providing sufficient reasons on the record. ***Id.*** at 6.[2] Appellant contends that "[a] sentence in the standard range, with a lesser period of confinement, could achieve the goals of the

_____

[2] We note this argument differs from that presented in the argument section of Appellant's brief wherein he asserts that his sentence was in the high end of the standard range. Appellant's Brief at 12. We shall address this discrepancy in our analysis.

- 11 -

protection of the public and the rehabilitative needs of [Appellant]." ***Id.*** at 6.

"[T]his Court has held that an excessive sentence claim-in conjunction with an assertion that the court failed to consider mitigating factors-raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Additionally, we have determined that an appellant raises a substantial question when he alleges that the trial court failed to state sufficient reasons on the record when imposing an aggravated range sentence. ***Commonwealth v. Fullin***, 892 A.2d 843, 850 (Pa. Super. 2006). Because Appellant has presented a substantial question, we proceed with our analysis.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. ***Fullin***, 892 A.2d at 847. In this context, an abuse of discretion is not shown merely by an error in judgment. ***Id.*** Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. ***Id.***

Furthermore, the "[s]entencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." ***Commonwealth***

*v. Boyer*, 856 A.2d 149, 153 (Pa. Super. 2004) (quoting *Commonwealth v. Moore*, 617 A.2d 8, 12 (Pa. Super. 1992)). Discretion is limited, however, by 42 Pa.C.S. § 9721(b), which provides that a sentencing court must formulate a sentence individualized to that particular case and that particular defendant. *Id.*

Section 9721(b) provides: "[t]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense, as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant ..." *Boyer*, 856 A.2d at 153 (citing 42 Pa.C.S. § 9721(b)). Furthermore,

> In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigative report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Boyer*, 856 A.2d at 154. Additionally, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Moury*, 992 A.2d at 171.

> Where an excessive sentence claim is based on deviation from the sentencing guidelines, we look for an indication that the sentencing court understood the suggested sentencing range. *See Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa.Super.2003). When there is such an indication, the sentencing court may deviate from the sentencing guidelines

- 13 -

>>to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.
>
>*Id.* (internal quotation marks and citation omitted).  Thus, simply stated, the sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside the guidelines as long as the sentencing court places its reasons for doing so on the record.  *Id.*

*Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (citing

*Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa. Super. 2005)).

Instantly, Appellant's sentence falls within the strictures of our sentencing guidelines.  The conviction carried an offense gravity score of eleven, and Appellant had a prior record score of two.  As such, the standard guideline sentence for that offense was forty-eight to sixty-six months of incarceration.  204 Pa.Code § 303.16(a).  Accordingly, Appellant's sentence of sixty to 120 months was in the standard range of the sentencing guidelines, as noted by the trial court at sentencing.  Appellant, therefore, must demonstrate that the application of those guidelines would be clearly unreasonable.  42 Pa.C.S. § 9781(c)(2).

As noted, Appellant submits that the sentencing court abused its discretion in sentencing Appellant to a lengthy period of incarceration given the mitigating factors of his case.  The sentencing court's statements prior to

imposing sentence, however, belie Appellant's allegation that the court failed

to consider these factors:

> The [c]ourt has considered the Pennsylvania Sentencing Code, the pre-sentence report and the Pennsylvania guidelines on sentencing. The [c]ourt has also considered the statements of the defense counsel, the witness for [Appellant] and the letters on behalf of [Appellant], and the statement of the attorney for the Commonwealth.
>
> The [c]ourt has considered [Appellant's] age, his background, his character and rehabilitative needs; the nature, circumstances, and seriousness of the offense, the protection of the community, and the impact that the offense has had upon the victim.
>
> The [c]ourt notes that the letters submitted on behalf of [Appellant] and the testimony of the witness for [Appellant] presented for the [c]ourt statements that indicate that [Appellant] is a good father, a family man, has done good things in the community, and for other people, and has, at least on a number of occasions in the past, conducted himself as an upstanding productive member of the community. And it is to his credit.
>
> [Appellant], however, also has a prior criminal history which is of significance in that it involves two prior assault convictions. Now this is his third and most serious.
>
> It involves four prior revocations; four times [Appellant] was given the opportunity to go back in the community on probation or parole, and four times he violated those conditions or requirements. It also indicates that [Appellant] participated and has been given the benefit of treatment in the past, in terms of GECAC outpatient treatment, Crossroads inpatient treatment, Lake Erie Counseling, White Deer Run inpatient, batterers' group, Stairways Dual Diagnosis, Gateway inpatient and Warren State Hospital.
>
> [Appellant] has had at least three inpatient treatments, and by his own admission, he still uses illegal drugs, marijuana, every day.

The [c]ourt also notes that as the district attorney has pointed out, and as the testimony of trial revealed, whatever the surrounding facts may have been and the jury decided them, the beating on the victim in this case, Mr. Birch, was frankly brutal and savage, and it obviously constituted an aggravated assault, and the jury decided that [Appellant] was guilty of that crime under the law, and, as I said before, we're not here to re-litigate it.

The impact on Mr. Birch has been significant. As he's indicated in his letter, he was incapacitated for approximately 12 to 16 weeks. He had to recover from surgery after the assault, and he had significant physical and mental issues pertaining to it as he struggled to get back to normal.

The [c]ourt notes that it does not appear, unfortunately, that any past jail sentences, of which you have had four, any past parole sentences, of which you have been placed on four times, or any past probation sentences of which you have had four, have rehabilitated or deterred you from engaging in further criminal activity.

And now, your criminal activity consists of a felony of the first degree.

The [c]ourt, having considered all of the circumstances, will order the following sentence which will be from the higher end of the standard range of the sentencing guidelines.

[Appellant] will be ordered to pay the costs, which will include the one hundred and sixty-five dollars and thirty-six cents. District attorney costs. Make restitution in the amount of seven hundred and thirty-three dollars and fourteen cents to Mr. Birch. No fine will be imposed in order to facilitate those expenses. And [Appellant] will be ordered incarcerated a minimum period of which will be sixty months, a maximum of which will be one hundred and twenty months. He is not RRRI eligible.

N.T., Sentencing, 7/1/15, at 18-21.

Despite Appellant's assertions to the contrary, the sentencing court was aware of his background, and in fact, reiterated it in significant detail.

The court heard testimony from Appellant's brother-in-law, from Appellant himself, and considered letters of support from friends and family. N.T., 7/1/15, at 8-14, 18. Additionally, the court had the benefit of a presentence investigation report, and considered all of the mitigating information contained therein. *Id.* at 14.

The sentence imposed was within the standard range of the sentencing guidelines, and the record reflects that the court carefully considered all of the evidence presented at the sentencing hearing. As such, we discern no abuse of discretion, nor can we conclude that the sentencing court arrived at a manifestly unreasonable decision in sentencing Appellant. *Boyer*, 856 A.2d at 153.

Furthermore, despite his assertion to the contrary in his Pa.R.A.P. 2119(f) statement, Appellant's sentence was not in the aggravated range. It was within the standard range of the sentencing guidelines. Accordingly, his argument that the trial court abused its discretion when it handed down a sentence in the aggravated range without providing sufficient reasons on the record lacks merit. Moreover, as outlined above, the sentencing court provided significant reasons for its sentence on the record.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2016