J-S73021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| COPELAND TYLER | |
| Appellant | No. 257 WDA 2016 |

Appeal from the Judgment of Sentence September 3, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015854-2014

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:               **FILED DECEMBER 2, 2016**

Copeland Tyler appeals from the judgment of sentence entered on September 3, 2015, in the Court of Common Pleas of Allegheny County. After careful review, we affirm.

On October 4, 2014, Officer Matthew Schwartzmiller responded to a shooting that occurred at the New Pennley Apartments located at 5601 Penn Avenue in East Liberty.  When he arrived at the scene, Officer Schwartzmiller found the victim, Reginald Turner, lying in a stairwell, with fatal gunshot wounds.  Officer Schwartzmiller also found Tyler with a gunshot wound to his right forearm.  Detective John Hamilton of the City of Pittsburgh Police Department's Mobile Crime Scene Unit photographed the crime scene and collected five .380 caliber shell casings and three .45 caliber shell casings.

Detective Robert Shaw of the City of Pittsburgh Police Department's Homicide Division was also on the scene and testified that although more than one firearm was fired, no firearms were recovered on the night of October 4, 2014. Tyler told the officers on the scene that he was shot and gave his name, but did not provide the officers with any additional information about what had occurred in the stairwell that evening. Tyler testified that he was carrying a firearm on the night in question because he was involved in a shooting a few weeks prior, explaining "I just got shot, and I was scared. I didn't want to get shot again. I thought I was going to die that day." N.T. Trial, 6/10/15, at 104. Deputy Medical Examiner Dr. Abdulrezak Shakir testified that Turner was shot three times. One bullet entered the back of Turner's head, and the other two bullets passed through Turner's back.

On October 28, 2014, detectives visited Tyler's home. After a brief interview, Tyler admitted to shooting Turner. The detectives transported Tyler to police headquarters and read him his *Miranda*[1] Rights. During the interview at police headquarters, Tyler told the detectives that he was in fear for his life that night.[2] After encountering Turner and a third, unidentified man in the stairwell of the New Pennley Apartments, Tyler grabbed Turner

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] During the trial, the Honorable Phillip A. Ignelzi viewed a tape of the interview that took place at police headquarters. N.T. Trial, 6/9/15, at 77.

and held a gun to his head, "hoping that [the third man] was going to leave me alone so I could leave and get out of the hallway." N.T. Trial, 6/9/15, at 108. Tyler indicated that the third, unidentified man shot first, and Tyler returned fire and fell down the steps with Turner. Tyler then testified that when he regained consciousness, he proceeded to shoot Turner two more times because he believed Turner still posed a threat. The detectives asked Tyler why he shot an unarmed man, and Tyler replied "He had to die. He got to go. What am I supposed to do?" N.T. Trial, 6/9/15, at 127. The Commonwealth also presented evidence that showed Tyler in an Instagram video holding a .45 caliber firearm and firing it into the air on a residential street. Tyler admitted that he was the individual in the video holding the firearm and that the video was posted to his account.

On December 23, 2014, Tyler was charged with one count of criminal homicide, one count of carrying a firearm without a license, and one count of a person not to possess a firearm.[3] On June 9, 2015, Tyler proceeded to a non-jury trial before the Honorable Philip A. Ignelzi. The trial court found Tyler guilty of one count of voluntary manslaughter,[4] one count of carrying a firearm without a license, and one count of a person not to possess a firearm. On September 3, 2015, Judge Ignelzi sentenced Tyler to an

---

[3] 18 Pa.C.S. § 2501(a); 18 Pa.C.S. § 6106; and 18 Pa.C.S. § 6105(a)(1) and (c), respectively.

[4] 18 Pa.C.S. § 2503(a)(1).

aggregate sentence of 12½ to 29 years' incarceration on all 3 counts, to be served consecutively.[5]  The trial court also ordered Tyler to pay $15,745 in restitution.

On September 14, 2015, Tyler filed a timely post-sentence motion seeking reconsideration of his sentence.  On January 19, 2016, the trial court filed an order denying Tyler's post-sentence motion by operation of law.[6]  Tyler filed a timely notice of appeal, and on February 29, 2016, the trial court ordered Tyler to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The trial court filed a Rule 1925(a) opinion on May 23, 2016.

Tyler raises the following issue for our review:

> Was the sentence imposed by the court manifestly excessive, unreasonable, and an abuse of discretion where the court focused on improper factors, sentenced in the aggravated range of the guidelines without providing reasons, failed to consider rehabilitative needs and focused solely on the seriousness of the offense to the exclusion of other

---

[5] Tyler's sentence for each count was in the aggravated range under the Pennsylvania Sentencing Guidelines.  Tyler's sentence was also within the statutory limits for each offense.  *See* Exhibit 1 to Commonwealth's Sentencing Memorandum, 8/26/15.

[6] Pennsylvania Rules of Criminal Procedure 720(B)(3)(a) (Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.).

factors despite the mandates of 42 Pa.C.S. § 9721(b)?

Appellant's Brief, at 4.

Tyler's claim implicates the discretionary aspects of his sentence.[7] When the discretionary aspects of a sentence are questioned, an appeal is not guaranteed as of right. **Commonwealth v. Moore**, 617 A.2d 8, 11 (Pa. Super. 1992). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011).

An appellate court will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole. **Commonwealth v. Tuladziecki**, 522 A.2d 17

_____

[7] Tyler filed a timely notice of appeal and preserved his claim in a post-sentence motion. Tyler also included a Pa.R.A.P. 2119(f) statement in his appellate brief. **See Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006); **see also** Pa.R.Crim.P. Rule 720.

(Pa. 1987). *See also Commonwealth v. Jones*, 613 A.2d 587, 590 (Pa. Super. 1992) (Superior Court will grant an appeal only when appellant shows that trial judge's actions were either: (1) inconsistent with specific provision of Sentencing Code; or (2) contrary to fundamental norms which underlie sentencing process).

"A substantial question is raised when an appellant alleges that the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating factors." *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa. Super. 2005); *see also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) ("It is well-established that a sentencing courts failure to consider mitigating factors raises a substantial question."). Our Supreme Court has held that where "[p]re-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). Additionally,

> [A] sentencing judge may consider any legal factor in deciding whether a defendant should be sentenced within the aggravated range. Second, in order to be adequate, the sentencing judge's reasons for sentencing within the aggravated range must reflect this consideration. Finally, the sentencing judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion.

*Commonwealth v. Duffy*, 491 A.2d 230, 233 (Pa. Super. 1985).

The Superior Court's standard of review when a defendant challenges the discretionary aspects of his or her sentence is very narrow; we will reverse only where appellant has demonstrated a manifest abuse of discretion by the sentencing judge. *Commonwealth v. Hermanson*, 674 A.2d 281 (Pa. Super. 1996).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (internal citations omitted).

Furthermore, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing

- 7 -

court's consideration of the facts of the crime and character of the offender." ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa. Super. 2010). The trial court should consider imposing a sentence "for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Tyler has raised a substantial question because he argues that the trial court failed to consider mitigating factors and provide reasons supporting an aggravated sentence in this case. ***See Hyland***, ***supra***.[8] Tyler contends that the sentence imposed was manifestly excessive, unreasonable, and an abuse of the trial court's discretion. We disagree. The trial court carefully considered Tyler's age, the seriousness of the crime, and Tyler's prior criminal record in accordance with Section 9721(b) before rendering a sentence in the aggravated range. ***See Walls***, ***supra***.

During the sentencing proceeding, Tyler's counsel asked the trial court to "look at his young age, look at the fact that he had graduated from the Academy, that he was working at Wendy's, that he had previously been victimized, [and] that he was shot that night." Appellant's Brief, at 68. We are confident that the trial court considered Tyler's accomplishments in addition to the seriousness of the crime and Tyler's prior criminal convictions.

---

[8] Tyler properly preserved his claim on appeal. ***See Evans***, ***supra***.

The trial court heard extensive testimony from family members and friends of the victim in addition to Tyler's mother and father. The trial court was satisfied that Tyler's conviction did not "come out of left field," as Tyler's father suggested to the court. *See* N.T. Sentencing, 9/3/16, at 59. (Judge Ignelzi reviewed Tyler's criminal history, explaining "at the age of 13 [Tyler] carried a gun. At the age of 16 [Tyler] carried a gun. And at the age of 18 [Tyler] carried a gun. And [Tyler] was shot months before this.").

The trial court also reviewed the Commonwealth's sentencing memorandum and the pre-sentence report. *See* Trial Court Opinion, 5/23/16, at 10 ("This Court reviewed the Commonwealth's sentencing memorandum and it agreed with the Commonwealth that there are aggravating factors in this case. This Court was also deeply disheartened by the pre-sentence report it received."); *see also Devers*, *supra*. Additionally, the trial court considered Tyler's young age when it rendered a verdict for the lesser-included offense of voluntary manslaughter rather than the original charge of criminal homicide. Specifically, the trial court showed ". . . mercy with its verdict, and as a result, Mr. Tyler will one day leave the walls of a state prison a free man. The alternative would have resulted in Mr. Tyler leaving the confines of a state prison only upon his death." Trial Court Opinion, 5/23/16, at 9.

Furthermore, Tyler's prior gun convictions deeply troubled the court and influenced the court's decision to render a sentence in the aggravated range. N.T. Sentencing, 9/3/15, at 61 ("those choices were made to carry guns; and

it's the third time [Tyler] made his choice to carry a gun"); *see also Crump*, *supra*. The trial court clearly stated that it considered both the evidence presented at trial and the evidence presented during the sentencing proceeding before determining an appropriate sentence. *Id*. at 71-72 ("[T]his sentence will be a result of many factors and considerations that the Court has. I agree with the Commonwealth that there are aggravating factors in this case.").

Therefore, the trial court did not manifestly abuse its discretion when it found that Tyler's previous convictions for gun possession, the Instagram photo showing Tyler shooting a firearm recklessly into the air, and Tyler's testimony stating that Turner "had to die" supported an aggravated sentence in this case. Trial Court Opinion, 5/23/16, at 8-10. Furthermore, the trial court determined that Tyler's "best chance of rehabilitation [would] be incarceration, as he is apparently not receptive to rehabilitation in public life," based on his prior criminal history. *Id*. at 10.

For the foregoing reasons, we affirm.

Judgment of sentence affirmed. Petition to withdraw granted.[9]

_____

[9] Carrie L. Allman, Esquire, Tyler's appellate counsel, filed a petition for leave to withdraw as counsel because she is leaving the Office of the Public Defender of Allegheny County. The Office of the Public Defender will still represent Tyler.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/2/2016</u>