J-A32035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROY GARNETT, | |
| Appellant | No. 393 EDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0003841-2015

BEFORE:  DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 27, 2017**

Appellant, Roy Garnett, appeals from the judgment of sentence imposed on December 18, 2015, following his jury conviction of one count each of possession with intent to deliver narcotics (PWID), possession of narcotics, and possession of drug paraphernalia,[1] as well as two counts of criminal conspiracy.[2]  On appeal, Appellant challenges the sufficiency and weight of the evidence and certain of the trial court's evidentiary rulings. For the reasons discussed below, we affirm the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113 (a)(30), (16), and (32), respectively.

[2] 18 Pa.C.S.A. § 903(a).

We take the underlying facts and procedural history in this matter from the trial court's April 12, 2016 opinion.

Officer Marc Barag is currently employed as a narcotics investigator for the City of Chester Police Department and has been so employed since April of 2013 and a member of the patrol unit since 2008. Prior to his employment with the City of Chester Police, Officer Barag was employed for a year with the Folcroft Borough Police Department.

In his current capacity as a narcotics investigator for Chester Police and as a member of the Delaware County Criminal Investigative Division, herein "CID" Task Force, Officer Barag conducts investigations which include surveillance, debriefing informants, as well as routine traffic stops to develop intel throughout Delaware County.

On March 13, 2015, at approximately 2:00 [] p.m., Officer Barag was working in the area of the 700 block of Caldwell Street, in Chester, Delaware County. Specifically, Officer Barag was conducting an undercover investigation by posing as a buyer looking to purchase heroin at 721 Caldwell Street.[a] Officer Barag was in plain clothes, in an unmarked police vehicle, acting as a normal citizen trying to purchase drugs. Officer Barag was given a number to text in order to purchase heroin from that residence; Officer Barag texted the number asking if he could buy heroin. Shortly thereafter, Officer Barag received a phone call from a male, with a deep authoritative voice asking who he was. Officer Barag recognized the male voice from prior contact, as Roy Garnett, herein Appellant. Officer Barag had no doubt that the voice was that of Appellant.

[a] 721 Caldwell Street is owned by Linda Garnett, Appellant's mother.

Although in an undercover location, Officer Barag's vantage point was in close proximity to Appellant during their conversations, allowing him to clearly see Appellant. Appellant was tall, wearing all black clothing, with a receding hair line and braids, in his 30's (sic). Officer Barag knew it was Appellant from prior interactions.

When Officer Barag texted Appellant, he observed Appellant pull out his phone and begin typing, and a second later, Officer Barag received a text message from Appellant. During the conversations, Officer Barag observed Appellant coming in and out of his residence, 712 Caldwell Street, which is across the street from the target location of 721 Caldwell.

Appellant asked Officer Barag who he was; Officer Barag replied: "Mike from Ridley." Officer Barag told Appellant that he wanted: "six bags of heroin for $50.00." Appellant responded: "no, $60.00 but if you wait twenty minutes for me to get it, I'll give you two on top of that for free." Officer Barag took that to mean that he would receive eight bags total for $60.00 if he waited.

After twenty minutes, Officer Barag texted Appellant saying, "Yo, it's been twenty minutes" and Appellant texted back, "it's coming."

During the interaction, Officer Barag observed Appellant walk from his residence at 712 Caldwell into the target house of 721 Caldwell and back out. When Officer Barag asked how much longer it would be, Appellant, texted him that he "was going to get it now." Shortly thereafter, Officer Barag observed Appellant walk out of the target house with Marcus Dennis and get into a white Nissan Armada[b] and drive away. Shortly thereafter, Appellant arrived back at 712 Caldwell in the same white Nissan Armada.

[b] Prior to the day in question, Officer Barag had the occasion to see Appellant driving the white Nissan [A]rmada several times, as it was registered to his girlfriend and then not again after March 13th.

At this point, Appellant was speaking with Officer Barag on the phone when Marcus Dennis got on the phone and asked if he wanted marijuana instead, to which Officer Barag said no. Then, Appellant and Marcus Dennis exited 712 Caldwell and went into the target house, 721 Caldwell. Prior to that day, Officer Barag observed Appellant and Marcus Dennis together several times on Caldwell Street.[]

At approximately 4:00 [] p.m., Officer Barag advised his narcotics unit to proceed into the area by way of a private

- 3 -

channel that cannot be picked up on scanners. When the unit arrived thirty seconds later, they made entry into the front of 721 Caldwell, and Officer Barag observed Appellant and Marcus Dennis run out of the rear side door which exits off the kitchen of the home; Appellant ran across the street and into his 712 residence. Officer Barag advised the other office[r]s that Appellant had fled into his residence across the street.

Officer Barag left his surveillance post and went into the target house, 721 Caldwell Street. Inside the kitchen, Officer Barag observed a black century safe, already open, that contained numerous new and unused wax paper sleeves commonly used to package heroin. Officer Barag was aware of the bags because of his capacity as an undercover officer, he sees heroin packaged all of the time and has made arrest or dealt with heroin in these specific bags hundreds of times. In addition to the bags, there was also a stamping kit with various stamps and [inkpads], which was also indicative of the drug trade because Officer Barag knew that once placed in a bag, drugs are then stamped so that the product can be branded and separated from the rest. There was also a bowl containing heroin residue, a tile containing heroin residue underneath the safe. The used bags were stamped with a red smiley face; a red [inkpad] and a smiley face stamp were among the stamps located.

After locating the items, Officer Barag went to assist Officer William Murphy, a fellow officer with the canine unit of the Chester Police Department who had initially gone to the rear of the residence. Officer Murphy has been employed as a patrolman for Chester City Police Department for the past sixteen years, and has been an officer for a total of twenty-five years. Officer Murphy and his canine partner tracked Marcus Dennis to an abandoned house a few houses to the left from the front of 721 Caldwell. Marcus Dennis was located in the basement of the abandoned and dilapidated house. As Marcus Dennis came up from the basement, Officer Barag went down and observed four bags of heroin, each bag containing two smaller bags, making it eight total bags of heroin marked with a red smiley face stamp. The basement itself was dirty and partially frozen; yet the bags were in mint condition.

While Officer Barag was securing Marcus Dennis, other officers went across the street in order to locate Appellant.

- 4 -

Sergeant James Nolan, a sergeant in the Narcotics Division, and who has been with the Department for nineteen years, was also working on March 13th. Sergeant Nolan assisted in executing the warrant on 721 Caldwell and then made his way over to 712 Caldwell in order to locate Appellant. Other officers were let into the residence by Appellant's girlfriend who answered the door; they related to Sergeant Nolan that Appellant was not in the home. At that point, Sergeant Nolan searched a connecting house that appeared to be abandoned, in total disarray. Sergeant Nolan pushed in the front door, which revealed a messy, dilapidated ruin of an old house. Sergeant Nolan and a second officer walked up the rickety staircase to the second floor. Sergeant Nolan could see that there was a third floor to the residence but no staircase in order to get there; rather, there was a hole that was closed off by relatively new drywall, which didn't make sense to Sergeant Nolan as the rest of the house was falling apart. Sergeant Nolan called for the fire department to bring a ladder. As Sergeant Nolan was waiting, he observed Appellant's girlfriend leave 712 [Caldwell] and drive away. When Sergeant Nolan was able to climb to the third floor he could see that work had been done to it, there was some newer drywall and was not as dilapidated as the rest of the house. Sergeant Nolan looked out the back window, which revealed that the second floor had a dark chocolate colored roof, which had white sneaker like footprints in the dust leading to the window of Appellant's house. Sergeant Nolan came down from the third floor and went over to Appellant's residence but no one answered the door.

That same day, Officer Barag had occasion to execute a search warrant on Marcus Dennis's vehicle, a Chevy brand car that was parked in front of 721 Caldwell Street. Located within the vehicle was court paperwork for [Appellant] for March 4, 2015.

After March 13th, Appellant was nowhere to be found in the area, which was very different from Officer Barag's prior experiences in the area, always seeing Appellant on the 700 block of Caldwell. Despite Appellant's best efforts to hide, he was eventually picked up on a warrant in May.

A jury trial commenced on November 17, 201[5] and concluded on November 18th. The Commonwealth proceeded on: Count 1: [PWID]: Heroin; Count 2: Possession of a

Controlled Substance: Heroin; Count 3: Possession of Drug Paraphernalia; Count 4: Criminal Conspiracy to [PWID] with Marcus Dennis; Count 5: Criminal Conspiracy to Possession of a Controlled Substance with Marcus Dennis.

The Commonwealth presented testimony from Officer Marc Barag, Officer William Murphy, and Sergeant James Nolan who testified to the facts as outlined above.

The Commonwealth also presented testimony from Officer Matthew Donohue, who is currently employed with the Chester City Police Department Narcotics Division. Officer Donohue, based on his extensive training and experience, was offered and accepted as an expert in illegal drugs, drug distributions, and drug investigations.[3] On March 13, 2015, Officer Donohue was working in his capacity as a narcotics investigator and had occasion to go to 721 Caldwell Street to help with the execution of the search warrant. Once inside the home, Officer Donohue observed a plethora of drug paraphernalia. Officer Donohue explained to the jury the purpose of the wax bags that were located and the stamps, and why the safe and bowl tested positive for heroin residue. Most notably, Officer Donohue explained why these items were possessed with the intent to deliver and not for mere possession. Officer Donohue also explained the purpose of a "trap house" and [] how 721 Caldwell was being used as a trap house to package and sell drugs. In conclusion, Officer Donohue opined that all facts taken into consideration, the drugs were possessed with the intent to distribute.

With the admission of several exhibits and stipulations, the Commonwealth rested. The defense did not present any evidence. After deliberating, the jury found Appellant guilty on all five counts.

---

[3] During *voir dire*, defense counsel questioned Officer Donohue with respect to his expertise "in the weight of heroin[.]" (N.T. Trial, 11/18/15, at 14-15). After the trial court found "Officer Donohue to be an expert witness in the field of illegal drugs, drug distribution and drug investigation[,]" defense counsel then asked that Officer Donohue also be qualified as an expert in "weight." (*Id.* at 16). The Commonwealth requested a sidebar conference and there is nothing further of record with respect to this issue. (*See id.*).

On December 18, 2015, [the trial court] sentenced Appellant [to an aggregate term of incarceration of not less than seventy-two nor more than one hundred and forty-four] months in a state correctional facility followed by [eleven] years of probation.

On December 23, 2015, Appellant filed a motion to reconsider sentence. After oral argument from the parties, [the trial court] denied the motion on January [20], 201[6]. Appellant filed a timely notice of appeal.[4] [The trial court] directed Appellant to file a 1925(b) statement, which counsel requested additional time to file. [*See* Pa.R.A.P. 1925(b)]. [The trial court] granted said request and the statement was timely filed on March 16, 201[6]. [*See id.* On April 12, 2016, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a)].

(Trial Court Opinion, 4/12/16, at 1-8) (record citations omitted).

On appeal, Appellant raises the following questions for our review:

A. Did the trial court abuse its discretion by failing to qualify Officer Donahue as an expert in illegal narcotics weight, where the record supports his experience, knowledge, and specialized skills and training would assist the trier of fact in understanding the evidence or fact at issue?

B. Did the trial court abuse its discretion by failing to qualify Officer Donahue as an expert in illegal narcotics weight thus depriving [Appellant] of his right to compulsory process[?]

C. Was the evidence sufficient as a matter of law to convict [Appellant] of the possessory offenses ([m]anufacture, [d]elivery, or [p]ossession [w]ith [i]ntent to [m]anufacture or [d]eliver; [i]ntentional [p]ossession of a [c]ontrolled [s]ubstance; and [u]se/[p]ossession of [d]rug [p]araphernalia), under the Controlled Substance, Drug, Device, and Cosmetic Act, 35 P.S. § 780-113[?]

---

[4] While the notice of appeal is listed in the docket, we have been unable to locate it in the certified record.

D. Was the evidence sufficient as a matter of law to convict [Appellant] of [c]riminal [c]onspiracy under 18 Pa.C.S.A. § 903?

E. Was the verdict against the weight of the evidence such to shock one's sense of justice?

(Appellant's Brief, at 4).

Preliminarily, we note it is well-settled that:

[i]f an appellant has properly preserved an issue for appellate review, the appellant must include in his or her brief a "statement of the case" including a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c). This information must also be referenced in the argument portion of the appellate brief. [*See*] Pa.R.A.P. 2119(e).

***Commonwealth v. Baker***, 963 A.2d 495, 502 n.5 (Pa. Super. 2008), *appeal denied*, 992 A.2d 885 (Pa. 2010). Further, "it is not the responsibility of this Court to scour the record to prove that an appellant has raised an issue before the trial court, thereby preserving it for appellate review." ***Id.*** at 502 n.6 (citations omitted).

In this case, neither Appellant's statement of the case nor the argument section of his brief contains a specific "statement of place of raising or preservation of [his] issues" and it is not this Court's responsibility to scour the certified record, including the lengthy trial transcript, to prove that Appellant preserved them. Pa.R.A.P. 2117(c); ***see Baker***, ***supra*** at 502 n.5, n.6; (Appellant's Brief, at 5-9, 14-33). Accordingly, Appellant's first, second, and fifth issues are waived on this basis. ***See Baker***, ***supra*** at

502 n.5, n.6. Nonetheless, we will review their merits to the extent it is possible to do so.

In his first and second issues,[5] Appellant challenges the trial court's alleged refusal to qualify Officer Donohue as an expert in narcotics weight. For the reasons discussed below, we find Appellant waived these issues.

We briefly note:

> [o]ur standard of review in cases involving the admission of expert testimony is broad: Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Watson*, 945 A.2d 174, 176 (Pa. Super. 2008) (quotation marks and citations omitted).

However, we observe that "[i]t is an appellant's duty to ensure that the certified record is complete for purposes of review." *Commonwealth v. Reed*, 971 A.2d 1216, 1219 (Pa. 2009) (citation omitted). "[A]n appellate court cannot consider anything which is not part of the record in the case. . .

---

[5] Appellant addresses his first and second questions under a single heading in his brief, contrary to our rules of appellate procedure. (*See* Appellant's Brief, at 14-22); *see also* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Nonetheless, we will address his issues because this discrepancy does not hamper our review. *See Donahue v. Fed. Express Corp.*, 753 A.2d 238, 241 n.3 (Pa. Super. 2000).

. because for purposes of appellate review, what is not of record does not exist." **Commonwealth v. Johnson**, 33 A.3d 122, 126 n.6 (Pa. Super. 2011), *appeal denied*, 47 A.3d 845 (Pa. 2012) (citations and internal quotation marks omitted).

In the instant matter, as discussed above, there is little information contained in the record with respect to these issues. During cross-examination of Officer Donohue with respect to qualifications, Appellant briefly cross-examined him regarding his experience with narcotics weight. (**See** N.T. Trial, 11/18/15, at 14-15). After the trial court qualified Officer Donohue as an expert in "illegal drugs, drug distribution and drug investigation[,]" defense counsel also requested that he be qualified as an expert on "weight as well." (**Id.** at 16). The Commonwealth then requested a sidebar conference. (**See id.**). Following the conference, the trial court reiterated its previous statement with respect to Officer Donohue's expertise. (**See id.**). There is nothing further of record with respect to these issues.[6] Thus, there is no record of the basis for Appellant's request to qualify Officer Donohue as an expert on weight.[7] There is nothing that

---

[6] In his brief, Appellant admits that the sidebar conference was off the record. (**See** Appellant's Brief, at 18).

[7] We note that, at trial, Appellant stipulated to the laboratory's report regarding the weight of the drugs. (**See** N.T. Trial, 11/18/15, at 45-46).

demonstrates that he raised his claims of the exclusion of relevant evidence[8] and denial of the right to compulsory process below. The trial court's ruling on these issues is not of record and there is nothing that shows that Appellant preserved them for our review.

Again, we note "our review is limited to those facts which are contained in the certified record" and what is not contained in the certified record "does not exist for purposes of our review." ***Commonwealth v. O'Black***, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citations omitted). Here, because all discussions regarding the qualification of Officer Donohue as an expert witness on drug weight are *dehors* the record, Appellant waived his first and second issues on appeal.[9] ***See O'Black***, ***supra*** at 1240; ***see also Reed***, ***supra*** at 1219 (finding waiver and declining to review appellant's issue with an incomplete record); ***Johnson***, ***supra*** at 126 (declining to reach merits of appellant's issue where it was deemed waived); ***Commonwealth v. Rovinski***, 704 A.2d 1068, 1073 (Pa. Super. 1997),

---

[8] We have thoroughly reviewed Appellant's brief on this issue and it is not clear, given that Appellant did not challenge the weight of the drugs as found by the laboratory report, why he needed the trial court to qualify Officer Donohue as an expert on weight. It is also not clear why he believed Officer Donohue's testimony on weight would benefit him. (***See*** Appellant's Brief, at 14-22).

[9] We note that, "[w]here portions of a proceeding are unrecorded, appellant's burden to supply a record may be satisfied through the statement in absence of transcript procedures." ***Rovinski***, ***infra*** at 1073 (citing Pa.R.A.P. 1923). The record reflects that Appellant made no attempt to comply with the requirements of Rule 1923.

*appeal denied*, 723 A.2d 1024 (Pa. 1998) (waiving appellant's claim of counsel's ineffective assistance based on his opening statement where he failed to provide transcript of statement in certified record).  Accordingly, Appellant waived his first two issues.

In his third and fourth issues, Appellant claims the evidence was insufficient to sustain his conviction.  We disagree.

Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt.  Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented.  It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder.  The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

Appellant challenges the sufficiency of the evidence with respect to his conviction for PWID, possession of a controlled substance, possession of drug paraphernalia, and criminal conspiracy.  Initially, we note that most of

Appellant's argument disregards our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth as verdict winner, because Appellant only discusses the expert testimony of Officer Donohue and completely ignores the testimony of the other police officers involved in the investigation. (*See* Appellant's Brief, at 24-26). Further, Appellant overlooks the fact that this Court does not re-weigh the evidence nor do we engage in credibility determinations. (*See id.*).

We review a challenge to the sufficiency of the evidence underlying a conviction for possession of a controlled substance and PWID under the following standards. Evidence is sufficient to support a conviction for possession of a controlled substance if the Commonwealth shows that the defendant, "knowingly or intentionally possessed a controlled or counterfeit substance[.]" 35 P.S. § 780-113(a)(16). For the evidence to be sufficient to sustain a conviction for PWID, the Commonwealth must prove both that Appellant possessed the controlled substance and that he intended to deliver the controlled substance. *See Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009). All the facts and circumstances surrounding the possession are relevant to this inquiry. *See id.* In particular, relevant factors include, but are not limited to, "the particular method of packaging, the form of the drug, and the behavior of the defendant." *Commonwealth v. Goodwin*, 928 A.2d 287, 292 (Pa. Super. 2007) (citations omitted). Further, we can infer the intent

to deliver from the possession of a large quantity of the controlled substance. *See Bostick*, *supra* at 560.

Because the police did not find drugs on Appellant's person, the Commonwealth was required to establish that he constructively possessed them. This Court has stated that:

> [c]onstructive possession requires proof of the ability to exercise conscious dominion over the substance, the power to control the contraband, and the intent to exercise such control. Constructive possession may be established by the totality of the circumstances. We have held that circumstantial evidence is reviewed by the same standard as direct evidence — a decision by the trial court will be affirmed so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa. Super. 2005) (citations and quotation marks omitted).

Appellant also claims that the evidence was insufficient to sustain his conviction for possession of drug paraphernalia. Section 780-113(a)(32) of The Controlled Substance, Drug, Device and Cosmetic Act prohibits the following acts:

> The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32).

Further,

- 14 -

> [i]n determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, statements by an owner or by anyone in control of the object concerning its use, prior convictions, if any, of an owner, or of anyone in control of the object, under any State or Federal law relating to any controlled substance, **the proximity of the object in time and space, to a direct violation of this act, the proximity of the object to controlled substances, the existence of any residue of controlled substances on the object**, . . . the existence and scope of legitimate uses for the object in the community, and expert testimony concerning its use.
>
> To sustain a conviction for possession of drug paraphernalia the Commonwealth must establish that items possessed by defendant were used or intended to be used with a controlled substance so as to constitute drug paraphernalia and this burden may be met by Commonwealth through circumstantial evidence.

*Commonwealth v. Little*, 879 A.2d 293, 299-300 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005) (citations omitted, emphasis in original).

Lastly, Appellant challenges the sufficiency of the evidence underlying his conviction for criminal conspiracy. (**See** Appellant's Brief, at 27-30). The crime of conspiracy is set forth at 18 Pa.C.S.A. § 903, which provides, in relevant part:

> **(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in

> conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
>     (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). Thus, to sustain a conviction for conspiracy, the Commonwealth must prove that:

> the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy.
>
> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa. Super. 2005) (citations and some quotation marks omitted). When determining whether the evidence was sufficient to support a conviction for conspiracy, we consider the following factors: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002), *appeal denied*, 805 A.2d 521 (Pa. 2002). Each co-conspirator is liable for the acts of the other co-conspirators. *See Commonwealth v. King*, 990 A.2d 1172, 1178 (Pa. Super. 2010), *appeal denied*, 53 A.3d 50 (Pa. 2012).

Here, the record reflects that Officer Barag conducted an undercover investigation into the sale of drugs on the 700 block of Caldwell Street. (**See** N.T. Trial, 11/17/15, at 31-32). The investigation focused on the house at 721 Caldwell Street, owned by Appellant's mother. (**See id.** at 32, 70). Officer Barag texted a known telephone number seeking to purchase heroin. (**See id.** at 32). A few moments later, Officer Barag received a response; he recognized Appellant's voice from prior contacts. (**See id.** at 34-35). Officer Barag also observed an individual he knew to be Appellant talking on the phone and responding to texts sent by him. (**See id.** at 36-39). During the conversation, Officer Barag observed Appellant walking between his residence at 712 Caldwell and 721 Caldwell. (**See id.** at 39).

After some negotiation, Appellant agreed to sell Officer Barag eight bags of heroin for sixty dollars, so long as Officer Barag could wait twenty minutes. (**See id.** at 36-37). When twenty minutes elapsed, the text and phone exchanges continued between Appellant and Officer Barag. (**See id.** at 40-42). Appellant assured Officer Barag that he was going to get the heroin and Officer Barag observed Appellant and Marcus Dennis drive away together in a car owned by Appellant's girlfriend. (**See id.** at 40-42, 56-57). Officer Barag had seen Appellant drive that car on various past occasions and had observed Appellant and Marcus Dennis together in the past. (**See id.** at 56, 59). A few minutes later, during another telephone conversation, Marcus Dennis joined in and asked if Officer Barag would be willing to

purchase marijuana rather than heroin. (***See id.*** at 41). Officer Barag declined and then observed Appellant and Marcus Dennis enter 721 Caldwell. (***See id.*** at 42).

The police then entered the residence, and Appellant and Marcus Dennis fled out a side door. (***See id.*** at 43-45). The police discovered an open safe containing unused wax paper sleeves, commonly used in heroin packaging, a stamping kit with various ink stamps, including a red smiley face, inkpads, a bowl containing heroin residue, and a tile containing heroin residue. (***See id.*** at 45-49). There were no indicia of personal use in the house. (***See*** N.T. Trial, 11/18/15, at 19-20).

The police located Marcus Dennis hiding in the basement of an abandoned house a few doors down from 721 Caldwell. (***See*** N.T. Trial, 11/17/15 at 52-54). The basement of the house was filthy and frozen; however, the police found four clean bags of heroin, each bag containing two smaller bags, all marked with a red smiley face stamp. (***See id.*** at 52-54, 183-90). When the police searched a car rented by Marcus Dennis, they found legal paperwork belonging to Appellant. (***See id.*** at 57-58).

In total, the police found eights bags of heroin, as well as heroin residue on the tile and bowl. They found no indicia that the drugs were for personal use but rather found materials commonly used for packaging drugs. The drugs found with Marcus Dennis in the basement were stamped with one of the stamps found in the safe. Appellant's mother owned the house at

721 Caldwell, the police observed both men enter and depart the residence. Both men participated in the conversation with Officer Barag about purchasing heroin. Based on the packaging and amount of the drugs, the absence of paraphernalia for personal consumption, the Commonwealth's expert concluded that the confiscated drugs were possessed with the intent to deliver and not for personal use. (*See* N.T. Trial, 11/18/15, at 25). This evidence was more than sufficient to sustain Appellant's conviction. ***See, e.g.***, ***Commonwealth v. Macolino***, 469 A.2d 132, 136 (Pa. 1983) (holding presence of cocaine and drug paraphernalia in room occupied by both husband and wife sufficient to show constructive possession by either spouse); ***Commonwealth v. Petteway***, 847 A.2d 713, 716 (Pa. Super. 2004) (finding evidence sufficient to establish constructive possession even though some of the drugs, weapons, and paraphernalia were found throughout house, where defendant was in house where drugs were discovered and defendant had weapon and drug paraphernalia in close proximity to his person); ***Commonwealth v. Torres***, 617 A.2d 812, 815-16 (Pa. Super. 1992), *appeal denied*, 629 A.2d 1379 (Pa. 1993) (holding evidence sufficient to sustain conviction for possession of drug paraphernalia where three unopened boxes of plastic sandwich bags were found next to packets of crack cocaine); ***Commonwealth v. Potter***, 504 A.2d 243, 246 (Pa. Super. 1986) (evidence was sufficient to sustain conviction for possession of drug paraphernalia where recovered items had commonly

recognized drug-related function). Appellant's challenge to the sufficiency of the evidence underlying his conviction for possession of a controlled substance, PWID, and possession of drug paraphernalia lacks merit.

Moreover, the evidence demonstrated all four factors necessary to sustain a conviction for criminal conspiracy. Appellant and Marcus Dennis were together at 721 Caldwell street and both participated in the telephone conversations about purchasing heroin. They drove off together to get the heroin. When the police entered 721 Caldwell both Appellant and Marcus Dennis fled the scene. (*See* N.T. Trial, 11/17/15 at 43). This evidence was sufficient to establish criminal conspiracy. *See Commonwealth v. Gibson*, 668 A.2d 552, 555 (Pa. Super. 1995) (holding that appellant's presence with co-conspirator during entire criminal episode proved conspiracy); *Commonwealth v. Cooke*, 492 A.2d 63, 68 (Pa. Super. 1985) (holding evidence sufficient to sustain conviction of conspiracy where appellant was present at scene, strongly associated with co-conspirator and personally participated in crime). Appellant's claim that the evidence was insufficient to sustain his conviction for conspiracy lacks merit.

In his final claim, Appellant challenges the weight of the evidence. However, Appellant has not preserved this claim for our review.

We have long held that this Court cannot consider, in the first instance, a claim that the verdict is against the weight of the evidence. *See Commonwealth v. Wilson*, 825 A.2d 710, 714 (Pa. Super. 2003). Here,

while Appellant did file a post-sentence motion, he challenged the discretionary aspects of sentence, not the weight of the evidence. (*See* Appellant's Motion to Reconsider Sentence, 12/23/15, at unnumbered pages 1-2). Thus, the issue is not preserved for our review. *See Commonwealth v. Burkett*, 830 A.2d 1034, 1036 (Pa. Super. 2003).

Moreover, even if we were to address the merits of the weight of the evidence claim, it would fail.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial

court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

In its Rule 1925(a) opinion, the trial court explained that there was not "a scintilla of evidence" to support Appellant's contention that Officer Barag's testimony was not credible because he "made up Appellant's involvement in order to get a promotion[.]" (Trial Ct. Op., at 15). It further noted that the "jury was free to believe all or part of Officer Barag's testimony, which the jury clearly determined was credible." (***Id.***). It concluded, "[t]here is nothing about the verdict, or any of the charges, that is contrary to evidence that it would shock one's sense of justice." (***Id.***). We agree. "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." ***Commonwealth v. Lee***, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted). This Court cannot substitute our judgment for that of the trier of fact. ***See Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S.Ct. 1792 (2014). This issue does not merit relief.

Appellant's issues are either waived or lack merit. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/27/2017</u>